G. R. CHRISTENSEN AND LEAH CHRISTENSEN, PLAINTIFFS AND RESPONDENTS, *v.* DAVE HUNT AND LILLIAN HUNT, DEFENDANTS AND APPELLANTS.

No. 10906.
Submitted April 6, 1966. Decided May 25, 1966.
414 P.2d 648.

Robert Skelton (argued), Skelton & Hendricks, Missoula, Leo J. Kottas (argued), Helena, for appellants.

MacCalman & Beighle, Deer Lodge, Knight and Dahood, Anaconda, Malcolm MacCalman (argued), Deer Lodge, Wade Dahood (argued), Anaconda, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This action was initiated by plaintiffs G. R. and Leah Christensen to regain possession of a certain ranch from the defendants Dave and Lillian Hunt. The case was tried without a jury by the Honorable Sid Stewart of the Third Judicial District of the State of Montana, in and for the County of Powell. From the Court's judgment entered upon findings of fact and conclusions of law granting relief to the plaintiffs the defendants appeal.

Two contracts for the sale of this ranch were entered into by the parties in this action. The first dated August 1962 has no bearing on the lawsuit except for the $6,000 tendered by

defendants as a down payment on that date. Due to differences arising between the parties during the period August 1962 to March 5, 1963, a second contract was entered into which is the basis of this action. During this period, with the exception of a month and a half at the beginning of the contract, the defendants were in full possession of all the property contracted for by them. Plaintiffs gave up possession and because of G. R. Christensen's poor health, the defendants dealt with plaintiffs' son-in-law, a J. B. Hendrix, who had a power of attorney under the first contract.

The March 5, 1963, contract called for a total purchase price of $139,750 for all real and personal property. It acknowledged the payment of the $6,000 paid in August 1962; acknowledged the payment of $5,000 on the date of the second contract; and $3,779.50 as payment for 24 head of livestock sold by the defendants but belonging to the plaintiffs; called for payments of $6,221.00 before June 15, 1963, and a sum of $10,000 before November 15th of each year until November 15, 1975.

For this the defendant received the real property plus leases, buildings valued at $25,600 and itemized ranch equipment valued at $10,300. On the date of contract the defendants received 126 Black Angus cows, 6 Black Angus bulls, 42 coming two-year-old Black Angus heifers, 110 to 115 1962 spring calves and 5 horses.

The defendants agreed to pay all taxes, assessments or impositions legally levied for the year 1963, and thereafter until completion, and one-quarter taxes levied for the year 1962, and to pay all lease rentals before due; to keep the house insured for at least $12,000; to prevent waste; to prevent any lawful liens being levied; to maintain all property or replacements in as good condition as when taken over; to operate the ranch in a good ranchlike manner; to maintain a breeding herd of Black Angus cows of at least 150 in number and 6 Black Angus bulls of comparable quality to present herd; to keep all breeding herd branded with Christensen brand; and to sell each

year 30 steer calves and 25 heifer calves upon which the buyer (defendant) had placed the seller's brand, and delivering the payment for such 55 calves to seller's escrow agent; also that the branding be done or supervised by a licensed veterinarian.

The second contract of March 5, 1963, did not settle the problems of the parties. The ranch house burned down on May 14, 1963, the six bulls were sold, 147 head of calves were sold, none with seller's brand as per contract, nor were any of the funds deposited with the escrow agent as per contract; no veterinarian was present during the 1963 branding; the 1963 taxes were not paid; a labor lien was filed against the property for some electrical work done; the November 15, 1963, payment of $10,000 was not made; and much of the machinery was sold, some without replacement. All told, the defendants during the period of occupancy from August 1962 to May of 1964 paid the plaintiffs $21,000, all of which came from the sale of plaintiffs' property except the original $6,000 down payment in August 1962. They realized from the sale of 132 cows and bulls and from farm machinery approximately $32,543. In addition $12,000 of insurance money went to the defendants which was used to partially finish a new ranch house.

The defendant Hunt's position concerning the alleged breaches of the contract was that he could not get any kind of a final agreement over disputed items with Mr. Hendrix, the son-in-law, and because of Mr. Christensen's ill health he was unable to deal with him; that he worked out a purchase in December 1963, but that it fell through due to lack of communication with the plaintiffs; that when he took over the ranch under the first contract certain items contracted for were missing though some of these were listed in the second contract; that the livestock was not what it was represented either in quality or number; that he had made numerous improvements in the ranch in new fences, ditches, corrals, water systems, bridges, improved roads, land leveling and his construction of a new house. Further, he complains that unknown to him at the

time of the contract there was a life estate in a cabin on the ranch that went to a previous owner and that her occupancy deprived him of a home for a hired hand. Too, defendant contends that the "Notice of Termination of Contract" had no force and effect because of its being sent to an address other than that provided for by the contract.

The Notice of Termination of Escrow Contract was mailed December 21, 1963, and received by defendant Lillian Hunt in Great Falls, Montana. Said notice gave four reasons for termination:

1. Permitting the lien to be levied against premises;

2. Failure to pay the property taxes;

3. Failure to brand 55 head of calves; and

4. Wilful and fraudulent sale of the 55 calves without crediting the sales receipts to the escrow contract. In addition the notice requested the immediate vacancy of the premises.

Paragraph IX of the contract concerning defaults provides as follows:

"Provided always, and these presents are on the express condition, time being of the essence thereof, that in case the BUYER makes default in the payment of any installment of purchase price or interest or should BUYER fail to keep and perform any other of the terms, covenants, stipulations, agreements or conditions hereof on her part to be kept and performed and such default, if occurring prior to December 1, 1967, shall continue for a period of forty-five days after the SELLERS have notified the BUYER in writing, or such default, if occurring after December 1, 1967, shall continue for a period of ninety days, then the SELLERS shall have the right to declare this contract void and to reenter and take possession of said lands, premises and personal property and pursue such other remedies as may be available to them; in the event that the breach by BUYER is wilful or fraudulent the BUYER then forfeits all payments made by her, at the option of the SELLERS; or SELLERS may declare the entire remaining balance

due and payable and pursue such other remedies as may be available to them."

Near the end of the trial Judge Stewart, after denying a motion for a nonsuit in a statement, said: "* * * the testimony at this point at the conclusion of the plaintiff's case has indicated to the court that there has been an intentional and wilful violation of the terms of the contract and that the defendants are not now in possession of the property, and that he is not now entitled to any money for normal maintenance of the ranch during the period of time he was on this property; however, if improvements have been made to the property that enhance the value of the property, then the defendant should be entitled to consideration of those improvements." Three appraisers were then appointed by the court to appraise the improvements and testimony was submitted for the court's consideration. Thereafter, the court made Findings of Fact and Conclusions of Law to which exceptions were taken by the defendants. Among the conclusions of law excepted to was that the defendant's breaches of the contract were, in fact and law, wilful and fraudulent.

While the defendant lists seven Specifications of Error and some fifteen subspecifications under Specification five we find for the purposes of this appeal that they can be answered under the following two considerations:

1. Was the notice of termination sufficient?

2. Was the defendant guilty of a wilful and/or fraudulent breach of contract?

▪ Were the defendants entitled to a 45-day notice regardless of the reasons for the termination and was the failure of plaintiffs to send the notice to the address provided for in the contract sufficient reason to make it a breach of the contract by the plaintiff. The defendants argue yes to both questions. While in effect the failure to send the notice to Drummond, Montana, as was provided for in the contract is a technical breach it did not prejudice the rights of defendants for they

received the notice at the address to which it was sent. They had notice and acted accordingly.

 Concerning the 45-day notice we find that the defendants fail to read paragraph IX of the contract in its entirety. The last provision reads: "* * * in the event that the breach by BUYER is wilful or fraudulent the BUYER then forfeits all payments made by her, at the option of the SELLERS; or SELLERS may declare the entire remaining balance due and payable and pursue other remedies as may be available to them."

Clearly the last provision of this paragraph contemplates for future in the event of a breach by the buyer that is *wilful* or *fraudulent* without a 45-day notice particularly when read with other parts of the contract.

Throughout the contract the plaintiffs have tried to protect themselves and insure the payments to them from the defendants. At the very least these provisions indicate either a disbelief by the plaintiffs in the defendants' ability to pay for the ranch or a distrust of the defendants by the plaintiffs. To allow a wilful or fraudulent operation to continue to run 45 days after plaintiff notified defendant that he knew of such wilful or fraudulent acts would give defendants time to destroy plaintiffs. Doubtless that is why the provision for the protection of the plaintiffs "in the event the breach by the buyer is wilful or fraudulent, the buyer then forfeits all payments made * * *" was placed in the contract.

 While forfeitures are not favored in law it can hardly be argued here that this is that type of forfeiture. For a down payment of $6,000, plus $15,000 later, the defendants received a minimum of $32,000 plus $2,500 for the overimprovements.

 As has been previously pointed out, the trial judge found the various acts of the defendants to be both wilful and fraudulent. This court has long held that it "indulges in the presumption that the judgment of the trial court is correct, and will draw every legitimate inference therefrom to support the

presumption (Citing case) that our inquiry into the evidence is limited as to whether the findings of the trial court are supportable when the evidence is viewed in the light most favorable to the prevailing party." Garden Spot Market v. Byrne (Board of Equalization), 141 Mont. 382, 378 P.2d 220; Duval v. Fuchs, 141 Mont. 123, 375 P.2d 541; Estate of Rudd, 140 Mont. 170, 369 P.2d 526.

Considered in this light we cannot disagree with the trial judge in view of the facts that show defendant not only did not brand the 55 calves as provided by the contract but branded them as his own, sold all the calves and did not deposit the sale price in the escrow account as was provided by the contract, sold off the 6 bulls and did not replace them as provided by contract, and the sale of the farm machinery, all considered together along with the other testimony could well amount to the finding of wilfulness and fraud as found by the trial judge. Most certainly these acts could come within the legal definition of wilfulness and fraud as has been set down by this court in the case of Waite v. Standard Accident Ins. Co., 132 Mont. 220, 315 P.2d 989, where the court said quoting from Ex parte Clark, 20 N.J.L. 648, 45 Am.Dec. 394, 396, " 'Whatever is *dishonest is fraudulent in foro conscientiae* and is so treated in a court of equity. Fraud and dishonesty are synonymous terms. * * *

" '* * * if he acts *unjustly and unlawfully,* he acts *fraudulently;* an unjust man is a fraudulent one.' "

We have examined all the specifications of error and find no error. Accordingly the judgment of the trial court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, CASTLES and DOYLE concur.