No. 12288

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

GLEN L. HELLICKSON, III,

        Plaintiff and Appellant,

-vs-

BARRETT MOBILE HOME TRANSPORT, INC.,

        Defendant and Respondent.

---

Appeal from: District Court of the Eighth Judicial District,
        Honorable Truman G. Bradford, Judge presiding.

Counsel of Record:

    For Appellant:

        John C. Hall argued, Great Falls, Montana.

    For Respondent:

        Swanberg, Koby and Swanberg, Great Falls, Montana.
        Raymond F. Koby argued, Great Falls, Montana.

---

Submitted: January 22, 1973

Decided: MAR 12 1973

Filed: MAR 12 1973

Thomas J. Kearney

              Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment entered in the district court of the eighth judicial district, Cascade County, Hon. Truman G. Bradford presiding. Plaintiff Glen L. Hellickson III, brought action to recover money allegedly due under a contract with defendant Barrett Mobile Home Transport, Inc. Trial without a jury began on October 29, 1971. Judgment for plaintiff was entered on February 16, 1972. Plaintiff appeals from the judgment, except that portion making an award to plaintiff.

Defendant is a Minnesota corporation doing business in Montana and other states, consisting mainly of transporting mobile homes in interstate and intrastate commerce. To carry on its business defendant employs persons to drive truck units to tow the mobile homes from one location to another.

In January 1964, defendant engaged plaintiff to tow mobile home units with plaintiff's truck. The parties entered into a leasing agreement, on a form provided by the state of North Dakota, whereby plaintiff leased his 1963 Ford truck to defendant at the rate of $50 per month. The agreement was for a term of one year from the date of execution and on a month to month basis thereafter. The agreement could be terminated by either party upon thirty days written notice to the other party. Although the truck was leased to defendant, plaintiff was to use the truck to carry out the terms of the employment agreement.

The employment agreement between the two parties was oral. A greater portion of the controversy here concerns the terms of that oral employment agreement, particularly since the terms of that agreement were altered from time to time. Essentially when the agreement began, plaintiff was to receive 85% of the revenue derived from the operation of plaintiff's truck in hauling mobile homes for defendant, less certain deductions.

The trial court found that on or about May 1, 1964, defendant changed the method of compensating its drivers. The compensation was changed from 85% to 75% and certain deductions were no longer made. Around June 1965, the general scheme of compensation was again changed so that, for interstate hauls, defendant's drivers were paid on a mileage scale based on cents per mile.

While employed by defendant, plaintiff operated a terminal for defendant's business in Great Falls. The parties had an oral agreement for the reimbursement of certain costs in connection with the operation of the terminal. Plaintiff claimed certain amounts were still owed to him for the operation of the terminal, along with other items. Defendant maintained that either all items had been paid or were offset by amounts owed to defendant by plaintiff. Other items of disagreement will be considered later in this opinion.

Plaintiff and defendant mutually terminated their agreements in October or November 1965. Plaintiff filed his first complaint in June 1966. After briefs and proposed findings of fact and conclusions of law were filed, the court entered its findings of fact and conclusions of law awarding plaintiff judgment in the amount of $415.58, plus costs and interest from November 1, 1965. Because plaintiff contends that additional sums were conclusively established as still owing to plaintiff, he appeals.

Plaintiff raises some questions concerning modification of a written agreement by oral testimony. Basically, however, the controlling issue is plaintiff's third issue: Are the findings of fact supported by the evidence?

The trial court issued thorough findings of fact on a complicated, complex, and conflicting factual situation. Collateral issues raised are directly dependent upon our duty in considering those findings.

A review of the rules pertaining to the function of an appellate court in situations such as is involved here is appropriate. In Hornung v. Lagerquist, 155 Mont. 412, 420, 473 P.2d

541, this Court said:

> "Our duty in reviewing findings of fact in a
> civil action tried by the district court without
> a jury is confined to determining whether there
> is substantial credible evidence to support them.
> St. Highway Com'n v. West Great Falls Flood Con-
> trol and Drainage District, 155 Mont. 157, 468
> P.2d 753, 27 St.Rep. 320, and cases therein
> sited."

See also: State Highway Comm'n v. Vaughan, 155 Mont. 277, 281,
470 P.2d 967.

The meaning of "substantial credible evidence" was
thoroughly considered recently in Staggers v. United States
Fidelity & Guaranty Co., _____Mont._____, 496 P.2d 1161, 29 St.
Rep. 357, 360.

The judgment of the trial court sitting without a jury
has the same effect as a verdict of a jury. State v. Naughton,
103 Mont. 306, 310, 63 P.2d 123. Certain presumptions aid us in
considering the findings of fact. The findings of the trial
court and the judgment based thereon are presumed correct. Nat.
Farmers Union Prop. v. Gen. Guaranty Ins., 150 Mont. 297,301, 434
P.2d 708; Christensen v. Hunt, 147 Mont. 484, 490, 414 P.2d 648.
In examining the evidence, we must veiw the testimony in a light
most favorable to the prevailing party. Estate of Hosova, 143
Mont. 74, 78, 387 P.2d 305; Holland v. Konda, 142 Mont. 536, 541,
385 P.2d 272. However, while the presumptions is in plaintiff's
favor, he is also the appealing party and as such, the burden is
upon him to overcome the presumption of the correctness of the
trial court's findings of fact. Nissen v. West Const. Equip.Co.,
133 Mont. 143, 146, 320 P.2d 997.

Here, the credibility of the witnesses is of prime impor-
tance. Since only two people other than plaintiff and defendant's
president testified, the witnesses found to be most believable
to the trial judge bear particular signficance. The credibility
and weight given the witnesses, however, is not for this Court to
determine. This is a primary function of a trial judge sitting
without a jury; it is of special consequence where the evidence is

conflicting. Eliason v. Eliason, 151 Mont. 409, 416, 443 P.2d 884; Strong v. Williams, 154 Mont. 65, 68, 460 P.2d 90; Dutton v. Rocky Mtn. Phosphates, 151 Mont. 54, 71, 438 P.2d 674.

In light of the principles stated above, we consider the findings of fact contested by plaintiff and determine whether substantial evidence exists to support them. Plaintiff excepted generally to all but three of the findings issued by the trial court. Plaintiff argued that virtually all of the findings excepted to were not supported by the evidence.

We do not find it necessary to delineate all the evidence in support of each finding of fact, we are concerned here only with the major disagreements. Wherever the testimony is directly conflicting, we presume the trial judge to be correct. Only he had the opportunity to observe the demeanor, candor and spontaneity of the witnesses. All minor points are within the legal maxim codified by section 49-125, R.C.M. 1947: "The law disregards trifles."

Here, one major disagreement was whether the lease agreement rental of $50 per month was in addition to the compensation received for hauling mobile homes, as plaintiff contended; or whether it was a part of the compensation, as defendant contended. Although plaintiff maintained at trial that the $50 per month amounts were due him from the inception of the employment agreement, plaintiff acquiesced in defendant's manner of payment for twenty-two months. He made no written demand on defendant for the alleged amount due. Richard Ward, plaintiff's witness in support of his contention, exhibited such uncertainty in relating his version of the same oral agreement that the trial judge could readily have given his testimony little weight. On the other hand, defendant's witness, Earl Wallace, who was present when the employment agreement between plaintiff and defendant was initially discussed, substantiated defendant's recollection. Plaintiff knew from his very first pay report that the $50 per month rental was a part of, not in addition to, the regular compensation. Yet, he did little, if

anything, to gain what he claimed at trial was due. The trial court had substantial evidence to find:

> "That during the entire period from January, 1964 through October, 1965 the oral arrangement extant between plaintiff and defendant contemplated that the commissions paid by the latter to the former would include and not be in addition to the rental * * *".

Another element of controversy concerned responsibility for repairs. Plaintiff contended at trial that defendant was obligated for repairs on the truck. True, the lease agreement form did indeed impose the obligation for repairs on defendant. However, at no time until the commencement of this action in June 1966, did plaintiff ever present any claim for repair expenses to defendant. In about April 1965, plaintiff sold his 1963 Ford truck and the lease agreement on that vehicle terminated; no new agreement was ever executed. The evidence was inconclusive as to whether the repair expenses claimed due were for the truck in the original agreement. Further, it is not entirely clear whether any repair expenses were attributable to the operation of plaintiff's truck while in defendant's service or during plaintiff's own personal use. The trial court found plaintiff acquiesced to the oral modification that defendant was not obligated for repair expenses to either of plaintiff's trucks. It concluded that plaintiff was now estopped from recovering those claims. We agree.

The final major disagreement concerns the actual compensation received for hauling mobile homes. Plaintiff conceded the agreement could indeed be changed from an 85% compensation rate to 75%, and then to a mileage basis. However, plaintiff asserts these changes could not be made unilaterally; consent to the changes must be mutual and must be communicated to the other party. While plaintiff claimed he was not notified of the change, there was evidence from which the trial judge could have found that the notice of the change had been communicated to all terminal offices.

It was established by defendant's witness, Wallace, that at the time the employment agreement was first discussed defendant's

president informed plaintiff the compensation might fluctuate during the course of employment. In any event, a letter from plaintiff to defendant indicated plaintiff was aware of the change by May 13, 1964. Yet, plaintiff continued to work for defendant; this employment even continued through a subsequent rate change. This course of conduct was sufficient, we believe, to preclude recovery for the compensation claim. The rule stated in 53 Am Jur 2d, Master and Servant, § 73, p. 148, is applicable:

> "Where, however, there is no definite term of
> employment fixed by contract, [as in this case]
> a notice by the master that for the future he
> will pay less wages to the servant and the con-
> tinued service thereafter of the servant without
> objection, creates a new contract based upon
> sufficient consideration."

We find no fault in the conclusions of law rendered by the trial court. Plaintiff's appeal does not concern itself with legal issues, but basically is on factual grounds. We cannot retry factual determinations made by the trial court. We are further persuaded that the monetary award was correct by the fact that plaintiff failed to remit certain revenues collected by him for defendant and due defendant.

There is ample justification in the record for the trial court's decision.

The judgment of the trial court is affirmed.

                                        _____
                                        Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.

- 7 -