NO.   94-506

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

MARK AHRENS and BRENDA AHRENS,

          Plaintiffs and Appellants,

     v.

WILLIAM KIRK COTTLE,

          Defendant and Respondent.


APPEAL FROM:   District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin,
               The Honorable Larry W. Moran, Judge presiding.


COUNSEL OF RECORD:

          For Appellants:

               Rienne H. McElyea, Berg, Lilly, Andriolo
               & Tollefsen, Bozeman, Montana

          For Respondent:

               J. David Penwell, Attorney at Law,
               Bozeman, Montana


Submitted on Briefs:   March 9, 1995

Decided:   June 15, 1995

FILED

Filed:   JUN 15 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellants Mark and Brenda Ahrens appeal from an order of the Eighteenth Judicial District Court, Gallatin County, granting summary judgment in favor of respondent William Kirk Cottle.

We affirm.

The issues on appeal are:

1. Did the District Court err in concluding that appellants failed to comply with the notice of default provisions contained in the parties' contract for the sale of real property?

2. Did the District Court err in concluding that appellants waived their right to terminate their contract with respondent and regain possession of real property?

3. Did the District Court err in not awarding attorney fees to appellants?

On April 15, 1988, appellants sold a home by contract for deed to respondent for $37,000. Respondent made a $150 down payment and agreed to pay $3,600, at eight percent interest, in monthly installments of $100 commencing May 1, 1988. Respondent satisfactorily performed this portion of the contract. In addition, respondent agreed to assume the balance of appellants' monthly payments to the mortgage lienholder, Carteret Federal Savings Bank.

Respondent failed to make the April and May 1993 payments to Carteret. As a result, on May 21, 1993, appellants attempted to serve respondent with a notice of default by taping a copy of the

2

notice to the back door of respondent's home. On June 9, 1993, appellants personally served respondent with a notice of acceleration of the contract. On June 14, 1993, respondent cured the April and May 1993 defaults. Respondent failed to make the payments for September, October, and November 1993. Appellants made these payments to Carteret without serving respondent with notice of default. In December 1993, respondent cured the September, October, and November 1993 defaults by making payment to Carteret.

Appellants filed suit on November 12, 1993, seeking to cancel the contract for deed and to reclaim possession of the property. Respondent and appellants filed motions for summary judgment. After a hearing on the motions the District Court issued its findings of fact, conclusions of law, and order granting respondent's motion for summary judgment. As of the hearing for summary judgment, all payments were current. On August 25, 1994, the District Court entered its judgment awarding attorney fees to respondent. It is from the District Court's order granting summary judgment to respondent that appellants appeals.

<u>ISSUE 1</u>

Did the District Court err in concluding that appellants failed to comply with the notice provisions contained in the parties' contract for the sale of real property?

We review conclusions of law to determine whether the district court's interpretation of the law was correct. In re Marriage of

3

Barnard (1994), 264 Mont. 103, 107, 870 P.2d 91, 93; In re Marriage of Burris (1993), 258 Mont. 265, 269, 852 P.2d 616, 619.

Paragraph 13 of the parties' contract for deed provides that all notices shall be deemed to be properly given if delivered in writing personally or sent by registered or certified mail. The District Court concluded that appellants did not comply with the notice provisions of the contract for deed by posting the notice of default to respondent's back door.

Appellants rely on Christensen v. Hunt (1966), 147 Mont. 484, 414 P.2d 648, Hares v. Nelson (1981), 195 Mont. 463, 637 P.2d 19, and LeClair v. Reitner (1988), 233 Mont. 332, 760 P.2d 740, to support their argument that Montana case law has consistently held that the failure to adhere to the technical requirements of notice pursuant to a contract is immaterial if an individual has knowledge of the notice. A review of Christensen, Hares, and LeClair shows that they are distinguishable from the present case.

In Christensen, the default provision in a contract for deed required that the seller send the notice of default to the address provided for in the contract. The notice of default was delivered to the buyer at an address other than the one listed in the contract. We concluded that sending the notice to the alternative address was a technical error that did not prejudice the rights of the buyer who received the notice at the address to which it was delivered.

4

In <u>Hares,</u> we affirmed the district court's termination of a contract for deed and granted the seller possession of the property. The buyer argued that he did not receive notice of default pursuant to the terms of the contract which was to be sent by registered mail. The buyer failed to retrieve the registered letter at the post office even though he knew the letter was waiting for him.

In an action for termination of a contract for deed, the buyer in <u>LeClair</u> argued that the notice of default was defective because the copy of the notice he received was not dated. We concluded that the terms of the contract for deed did not require that the notice be dated in a certain way, except to specify that service by mail was complete upon deposit in a post office. The buyer acknowledged receiving the notice by certified mail and was not prejudiced by the failure to date the notice.

By contrast, appellants in the present case attempted to serve respondent by posting the notice to his back door despite the contract's requirement of personal service or service by mail. While respondent testified that he eventually found and read the notice, he could not identify exactly how long after the notice had been posted to his back door that he discovered it.

Appellants argue that posting the notice on respondent's back door afforded him the same notice he would have received had appellants personally delivered or mailed the notice of default. We disagree.

Posting the notice of default to respondent's back door constituted a material, rather than a technical, flaw in service. Under the terms of the contract for deed, if the buyer fails to cure a default within 15 days after receiving notice of default, the seller has the right to give the buyer written notice of acceleration. Consequently, under the terms of the contract, a notice of acceleration is only valid if it is preceded by proper service of the notice of default which then triggers the 15 day default period. The contract is clear as to the two proper methods of service.

Appellants posted the notice of default on respondent's back door on May 21, 1993. Had respondent been properly served on May 21, he would have had until June 5 to cure any defaults. Had the defaults remained uncured thereafter, appellants were entitled to accelerate the obligation under the contract. Believing that respondent had been properly served with notice of default, and knowing that respondent had not cured the April and May defaults within the 15 day period, appellants served respondent with notice of acceleration on June 9, 1993. However, respondent cured the April and May defaults on June 14, 1993, after discovering the notice of default posted on his back door sometime in May.

We hold that the District Court did not err in concluding that appellants failed to comply with the notice provisions contained in the parties' contract for the sale of real property.

Did the District Court err  in concluding that appellants waived their right to terminate their contract with respondent and regain possession of  the  property?

We apply the same standard of review to Issue 2 that we applied to Issue 1.

Respondent failed to make the September, October, and November 1993 payments to Carteret.  After being so informed by Carteret, appellants made those payments to Carteret without first serving respondent with notice of default and without informing respondent that they made the late payments.  In  addition, appellants did not instruct Carteret to refrain from accepting further payments from respondent.  In December 1993,  respondent brought  the  contract current by making the September, October,  and November payments to Carteret.  As a result, Carteret received double payments for September, October, and November 1993.

The District Court concluded that:

The acceptance of a payment on a contract after the seller has declared or attempted to declare a default constitutes a waiver of the default and such waiver denies to the seller the right of the seller to sue for acceleration of the contract.  Bailey v. Lilly (1983), 205 Mont. 35, 667 P.2d 933. See also Shultz v. Campbell (1966), 147 Mont. 439, 413 P.2d 879.

Therefore, the [appellants'] action to foreclose the contract must be dismissed because of a waiver by the [appellants] in accepting payments under the contract. The [appellants] claim that Carteret, not they, accepted the payments made by the [respondent] to Carteret and made no effort to advise Carteret that the [appellants] were attempting to terminate the contract and that Carteret was not to accept such payments.

7

Appellants argue that they did not waive their right to terminate the contract because they did not have the ability to direct whether Carteret accepted or retained the late payments from respondent. There is nothing in the record to show that appellants were powerless to notify Carteret not to accept further payments from respondent. However, appellants were not required under the contract to notify the bank to refrain from accepting further payments from respondent. Under the terms of the contract, appellants were required to first serve respondent with a notice of default as a precondition to serving a notice of acceleration. Appellants failed to properly serve respondent with a notice of default after the April and May defaults, and appellants failed to serve respondent with any notice of default after the September, October, and November defaults.

Similarly, we are not persuaded by appellants' argument that waiver did not occur because Carteret, not appellants, accepted and retained respondent's delinquent payments. The contract for deed shows that respondent agreed to make appellants' mortgage payments directly to the mortgage lien holder, Carteret. Consequently, a mortgage payment from respondent to Carteret in satisfaction of appellants' obligation to Carteret, is the equivalent of a payment from respondent to appellants. As a result, it is irrelevant that respondent's delinquent payments were accepted and retained by Carteret, rather than by appellants. What is relevant is the fact that because respondent had not been served with notice of default,

8

he made payments to Carteret in satisfaction of the underlying obligation, and those payments were accepted and retained. Any defaults that may have occurred were cured when respondent brought all payments to date.

We hold that the District Court did not err in concluding that appellants waived their right to terminate their contract with respondent and regain possession of the property.

<u>ISSUE 3</u>

Did the District Court err in not awarding attorney fees to appellants?

Appellants asked for attorney fees based on the alleged defaults by respondent. However, as we have held that appellants failed to give any proper notices of default, there is no obligation to pay attorney fees under the circumstances.

We affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

9

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.  As a result of this decision, technical form is elevated over substance, while substantial justice is avoided, and the sellers' credit rating continues to be jeopardized because of the buyer's failure to comply with the terms of his contract.

### NOTICE COMPLIANCE

The contract for sale of real estate, which was executed by the parties, provides in paragraph 12 that when the buyer fails to make payments due under the contract within 15 days of the due date, the sellers have the right to give the buyer notice that the payment must be made within 15 days from the date of notice.  If notice is given and payments are not made within 15 days, the sellers have the right to accelerate all payments called for under the terms of the contract, and the balance of the principal, along with interest then due, must be paid within 15 days from the notice of acceleration.  If the balance is not paid within the provided time, the sellers have the right to terminate the contract.

Paragraph 13, as noted by the majority, requires that notice be delivered in writing personally or sent by registered or certified mail to the buyer.

In this case, notice was delivered to the buyer at his place of residence by posting it on the door to his home.  The notice was dated May 21, 1993, and was delivered on May 25.  In the notice, Cottle was notified that he was in default by failing to make the payments that were due on April 1 and May 1, 1993.  He was also

10

notified that unless he corrected the default within 15 days, that the sellers had the right to accelerate the amounts due under the contract and declare the entire balance due. Cottle understood the substance of the notice, and eventually presented it to his attorney. However, his default was not cured within 15 days from the date on which the notice was delivered. He did not make the April and May payments until June 14, 1993.

The majority makes much of the fact that Cottle may not have had actual notice 15 days before he actually cured his default. However, a reasonable inference from the facts which were proven is that Cottle did have notice more than 15 days before actual payment was made. The affidavit of the Ahrens' process server established that the notice was posted on the door to Cottle's home on May 25, a full 19 days before payment was made. Cottle offered no evidence to suggest that he did not observe the notice on the same day, or reasonably soon after it was posted. In fact, he admitted that he actually received the notice in May, which means that he had a minimum of 14 days' notice before he made payment. The fact that Cottle suffered no actual prejudice from the manner in which notice was delivered is best illustrated by his own testimony, which was as follows:

> Q. Okay. Can you tell me the circumstances of when you found a document at your house?
>
> A. There was an envelope taped to my door.
>
> . . . .
>
> Q. And would this have been in the springtime?

11

A.    Was it May?  Yeah.

Q.    Did you open the envelope?

A.    Yes.

Q.    Okay.  And do you remember what you found inside?

A.    I believe there was a copy of a Notice of Default.

Q.    Did you read the document?

A.    Yes, I did.

Q.    What did you do with the document?

A.    Put it on my desk.

Q.    Do you still have that document?

A.    No, I do not.

Q.    What happened to it?

A.    I believe my attorney has it.

Q.    So you gave him the document that you had?

A.    Yes.

Q.    So when you received the Notice of Default in May of 1993, you understood that you were in default under the terms of the contract?

A.    Yes.

Q.    When you received this document that was posted to your door, the Deposition Exhibit 13, were you late in your payments?

A.    I don't remember.

Q.    Given what we've just all gone through in this sheet, which explains your payment history, Deposition Exhibit 4, doesn't that characterize that you were late in your payments?

12

A.    Yes.

I would conclude that since Cottle had actual knowledge of his default, and had actual receipt of the notice of default sufficiently in advance of the date on which he was required to cure the default, that the notice and default terms of the parties' contract were substantially complied with, and that to the extent there was any technical deviation from the specific language in the contract, that deviation was in no way material nor prejudicial to Cottle.  This conclusion is consistent with our prior decisions in *Christensen v. Hunt* (1966), 147 Mont. 484, 414 P.2d 648, and *LeClair v. Reiter* (1988), 233 Mont. 332, 760 P.2d 740. While it is true, as pointed out in the majority opinion, that neither of these cases have precisely the same facts as this case, the principle involved is identical.  In both cases, we held that a technical deviation from the default notice requirements in a contract cannot be asserted by the buyer as a defense to termination of the contract where his or her rights have not been prejudiced.  That is exactly the situation here.  While Cottle did not receive written notice by registered **mail,** he received written notice at the same location where the registered mail would have been delivered, and he received it well in advance of the date by which he was notified that his default must be cured.  Therefore, he suffered absolutely no prejudice based on the manner in which the notice was delivered.

For these reasons, I would reverse the District Court's conclusion that as a matter of law the Ahrens are unable to

terminate their contract with Cottle because of their failure to comply with the notice provisions in their contract.

## WAIVER

The principles of waiver, when correctly applied, are based on principles of fairness. However, the doctrine of waiver was never intended to reduce commercial transactions to some form of the game of "gotcha." Yet, that is exactly the effect of the majority decision.

"'Waiver is a voluntary and intentional relinquishment of a known right, or claim or privilege.'" *Carpenters-Employers Trust Fund v. Galleria Partnership* (1989), 239 Mont. 250, 259, 780 P.2d 608, 613 (quoting *Thiel v. Johnson* (1985), 219 Mont. 271, 274, 711 P.2d 829, 831). Nothing that the Ahrens did even remotely resembled the intentional relinquishment of a known right.

Cottle's late payments were not sent to, nor kept by, the Ahrens. They were sent to the Carteret Federal Savings Bank to satisfy the Ahrens' monthly payment obligations. The Ahrens had no control over the fact that the payments were sent; they had no control over Carteret's acceptance of the payments; they didn't even know that the payments were made. They had no affirmative obligation under the principles of waiver to affirmatively notify Carteret that the payments would not be accepted. Furthermore, no such obligation should be imposed. The Ahrens were the obligors in the contract with Carteret. Their credit rating had already been severely damaged by Cottle's frequent failure to make timely

14

payments, and they should not have had to make payments for property they did not possess while they were attempting to recover it.

While the majority may assume, as it has in the past, that equity favors the avoidance of a forfeiture, the equities in this case are quite to the contrary. The hardship that this contractual relationship, and this Court's decision, create for the Ahrens is best illustrated by the following portions of the affidavit of Brenda Ahrens submitted on August 1, 1994:

6. Mr. Cottle did not assume the Carteret Federal Savings Bank note. Since 1990, Mr. Cottle has been late in payments on 14 separate occasions. He has driven this note into foreclosure on three separate occasions.

7. I have no control over Carteret Federal Savings Bank. Carteret accepts payments without my approval or authorization. If the contract is not paid, they will automatically take the note into foreclosure proceedings.

8. Because my name is on the note, my credit has been completely destroyed by Mr. Cottle's failure to timely make his payments.

. . .

11. In October, 1993, I was advised that Mr. Cottle's September, 1993, check bounced and was returned. The September, October, November, and December, 1993, payments were not made by Mr. Cottle and I was forced to pay ONE THOUSAND SEVEN HUNDRED NINETY-ONE AND 56/100 DOLLARS ($1,791.56) in order to keep the property from foreclosure . .

12. My credit has been destroyed by Mr. Cottle's failure to make timely payments and his repeated system of driving this matter into foreclosure.

For these reasons, I conclude that there was no waiver of Cottle's default based on any reasonable definition of that term. I would reverse the order of the District Court which granted

15

Cottle's motion for summary judgment, and the District Court order which denied the Ahrens' motion for summary judgment, and I would remand to the District Court for a determination of the attorney fees to which the Ahrens are entitled in this matter.

_____
J stice

June 15, 1995

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Rienne H. McElyea
Berg, Lilly, Andriolo & Tollefsen, P.C.
910 Technology Blvd., Suite A
Bozeman MT 59715

J. David Penwell
Attorney At Law
Box 1677
Bozeman MT 59715-1677

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy