DA 08-0093

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 253

HIGHWAY SPECIALTIES, INC.,
a Montana Corporation,

               Plaintiff and Appellant,

     v.

STATE OF MONTANA, DEPARTMENT
OF TRANSPORTATION, MAINTENANCE DIVISION,

               Defendant and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
                      In and For the County of Lewis and Clark, Cause No. BDV-2005-306
                      Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Jerry W. Schuster; Jerry W. Schuster Law Firm; Great Falls, Montana

        For Appellee:

                Timothy Reardon, Stephen F. Garrison; Legal Services,
                Montana Department of Transportation; Helena, Montana

                            Submitted on Briefs:  November 6, 2008

                                    Decided:  August 3, 2009

Filed:

                    _____
                                 Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Highway Specialties, Inc., (HS) appeals from the order of the First Judicial District Court, Lewis and Clark County, awarding summary judgment to the State of Montana, Department of Transportation, Maintenance Division (MDT) and enforcing a liquidated damages clause in a contract for a federally funded highway project. We affirm.

¶2 We restate the issue on appeal as follows:

¶3 Did the District Court err in awarding summary judgment to MDT and enforcing a liquidated damages clause in a contract for a federally funded highway project?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 The following facts are undisputed. In April 2003, MDT issued an invitation for bids (IFB) for a federally funded highway re-striping project on 575 miles of highway in northeastern Montana. The project required the contractor to furnish surface preparation and apply epoxy pavement lines, words and symbols on U.S. Highway 2, Montana Highways 13 and 24 and various connector streets near Glasgow, Sydney, and Wolf Point, Montana. Because of safety concerns and reduced visibility in Montana's winter months, MDT wanted the project completed before the 2003-2004 winter.

¶5 MDT awarded the contract to HS as the low bidder on the project. According to the terms of the written contract, HS agreed to complete the project for $370,134.79 and was required to complete the work on or before August 15, 2003. The completion date was capitalized and bolded in the contract. If HS failed to complete the work on or before August 15, 2003, the contract authorized MDT to assess liquidated damages for

2

each workday the project went over schedule. The liquidated damages clause stated the following:

> In the event the Contractor does not complete the work by the designated contract date or within the designated working days, liquidated damages will be assessed in the form of a daily charge for each day, except Saturdays, Sundays and legal holidays which exceed the designated contract date or working days. The daily charge will be determined from the schedule in Standard Specification Article 108.08 under fixed date. This charge will be deducted from money due the Contractor.

At the time the parties entered into the agreement, MDT's Standard Specification Article 108.08 (Article 108.08) set the daily charge rate at $387 for "fixed date" projects with a contractual sum of $100,000 to $500,000.

¶6      Despite its contractual agreement with MDT to complete the project on or before August 15, 2003, HS did not begin working on the project until at least October 27, 2003, over two months after the project was scheduled to be complete. On November 19, 2003, HS stopped working on the project altogether because of winter weather conditions. By this time, HS had striped less than 50 miles of the project's total length. HS then asked MDT's maintenance chief for a change in the completion date but MDT denied the request. Neither the IFB nor the contract authorized a work-stoppage because of inclement weather. HS resumed working on the project on March 29, 2004, and completed the project a month later.

¶7      After HS completed the project, MDT assessed HS $68,122 in liquidated damages for the 176 workdays the project went over schedule. The damages were assessed in accordance with MDT's Article 108.08, which, as noted above, set the daily charge rate for the size of the project at $387 per working day. HS disputed the amount of liquidated

3

damages assessed by MDT, claiming that the amount far exceed the actual cost to MDT. MDT denied Highway's request for relief and the Montana Transportation Commission did not take action on the request.

¶8 HS commenced this action to recover the liquidated damages assessed by MDT. HS subsequently moved for summary judgment, claming the liquidated damages provision was unconscionable and unenforceable under this Court's decision in *Arrowhead School Dist. No. 75, Park Co., Montana v. Klyap*, 2003 MT 294, 318 Mont. 103, 79 P.3d 250. MDT also moved for summary judgment. MDT argued that the liquidated damages clause—a clause which MDT was required to include pursuant to federal law—was not unconscionable under *Arrowhead*. The District Court granted MDT's motion for summary judgment and enforced the total amount of liquidated damages assessed against HS. In reaching its decision, the District Court concluded that HS could not demonstrate that "the provisions of the contract were not within HS' [sic] reasonable expectations or were unduly oppressive, unconscionable or against public policy," in part because contractors may provide input on MDT's contractual terms on an annual basis. The court also noted that federal law required MDT to include the liquidated damages clause in the contract and that Montana law requires contractors to unconditionally accept public bids. HS appeals.

**STANDARD OF REVIEW**

¶9 We review a district court's grant of summary judgment de novo, applying the same standard used by the district court under M. R. Civ. P. 56. *Smith v. Burlington Northern & Santa Fe Ry.*, 2008 MT 225, ¶ 10, 344 Mont. 278, 187 P.3d 639. Summary

4

judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56.

¶10 Whether a stipulated damages provision in a contract is an enforceable liquidated damages provision or an unenforceable penalty is a question of law which we review for correctness. *Arrowhead*, ¶ 10.

## DISCUSSION

**¶11 Did the District Court err in awarding summary judgment to MDT and enforcing a liquidated damages clause in a contract for a federally funded highway project?**

¶12 In *Arrowhead* we recognized a lack of clarity in Montana case law regarding pre-determined or liquidated damages provisions and thus, set forth a new test for determining whether such provisions are enforceable in this state. After *Arrowhead*, liquidated damages provisions are presumed enforceable and will be enforced unless the party opposing the provision has established that it is unconscionable "as indicated by the nature of the bargaining process between the parties." *Arrowhead*, ¶¶ 48, 54. Unconscionability is a two-step inquiry: (1) whether the provision fits the doctrine of a contract of adhesion such that the weaker bargaining party had no meaningful choice regarding its acceptance; and (2) whether the contractual terms are unreasonably favorable to the drafter, usually the party with superior bargaining power. *Arrowhead*, ¶ 48. Under the second step, courts will inquire into whether the provision "is within the reasonable expectations of the weaker party or is unduly oppressive to the weaker party." *Arrowhead*, ¶ 48. Since the test for unconscionability focuses on the nature of the bargaining process, we will only strike a liquidated damages clause "if the bargaining

5

process itself had some inherent unfairness that actually prevented the contract from being freely negotiated . . . ." *Arrowhead*, ¶ 49. When making a determination of unconscionability, courts are not bound by any specific type of evidence—any relevant evidence may be considered. *Arrowhead*, ¶ 55.

¶13 HS argues the District Court erred in applying the test set forth in *Arrowhead* and by enforcing the liquidated damages clause. First, HS claims the liquidated damages clause is unconscionable because it constitutes a contract of adhesion. HS claims it was required to accept the IFB and the contract on a take-it-or-leave-it-basis without modification and that it had no meaningful opportunity to negotiate the terms of the agreement. Second, HS claims that MDT's actual damages are disproportionate to the $68,112 it assessed in liquidated damages. HS claims that MDT actually sustained $21,338.06 in damages for the 176 working days the project went over schedule, although the District Court did not find this claim credible in part because HS evidently did not request information about MDT's "equipment costs, vehicle and gas costs, telephone costs, computer and network services costs, and other actual costs . . ." when it approximated MDT's actual damages. Finally, HS claims the liquidated damages clause is unenforceable because the daily charge rates in Article 108.08 were developed by MDT's construction department for construction projects instead of its maintenance department for maintenance projects such as the striping project at issue here. HS claims that the liquidated damages rates developed by and for the construction department cannot apply to maintenance department projects.

6

¶14 MDT, on the other hand, argues that HS failed to demonstrate that the liquidated damages clause was unconscionable since HS had the opportunity to discuss contractual terms with MDT, as do all contractors, on an annual basis, and that federal law required it to include the liquidated damages clause in HS's contract. MDT also argues that, pursuant to state law, all bidders must bid upon the same specifications and cannot negotiate or refuse to comply with contractual terms. Further, MDT argues that HS was not an unsophisticated contractor and that it was fully aware of the contract's liquidated damages provision. Based on the foregoing, MDT claims the liquidated damages provision was correctly enforced.

¶15 Under 23 C.F.R. § 635.127(a), the Federal Highway Administration (FHWA) requires each state's transportation department to "establish specific liquidated damages rates applicable to projects in that State." The rates must at least "cover the estimated average daily construction engineering (CE) costs associated with the type of work encountered on the project." 23 C.F.R. § 635.127(a). Further, the rates are subject to FHWA approval and must be reviewed by MDT at least every two years. 23 C.F.R. § 635.127(b). However, while we recognize that MDT was required to establish the liquidated damages rates, this fact is not dispositive. It is not necessarily true that all federally required liquidated damages provisions will be enforceable. There may be situations where, given the analysis in *Arrowhead*, the specific provisions of the liquidated damages clause may be unconscionable and thus, unenforceable in Montana. Therefore, we now turn to a discussion of whether the clause at issue here is unconscionable under the analysis set forth in *Arrowhead*.

7

¶16 As noted above, the first inquiry under *Arrowhead* is whether the contract, including the liquidated damages clause, is a contract of adhesion such that the weaker bargaining party had no meaningful choice regarding its acceptance. *Arrowhead*, ¶ 48. A contract of adhesion "is a contract whose terms are dictated by one contracting party to another who has no voice in its formulation." *Denton v. First Interstate Bank of Com.*, 2006 MT 193, ¶ 30, 333 Mont. 169, 142 P.3d 797. Here, HS was required to accept the bid unconditionally and could not negotiate the terms of the liquidated damages clause. *See* § 18-4-303(6), MCA (stating that "[b]ids must be unconditionally accepted without alteration . . ."). However, HS does not dispute that it had the opportunity to discuss contractual terms with MDT on an annual basis, a fact which the District Court found particularly persuasive when it determined that the clause was not unconscionable. HS argues instead that this opportunity was not meaningful. We do not, however, have to address the contract of adhesion issue because, even assuming arguendo that the liquidated damages clause was a contract of adhesion, HS cannot establish that the contract's terms were not within its reasonable expectations, unduly oppressive, or against public policy under the second prong of the inquiry under *Arrowhead*. The clause will only be deemed unconscionable if it is a contract of adhesion *and* if the contractual terms were unreasonably favorable to the drafter, which is generally determined by whether the provision was within the reasonable expectations of, or unduly oppressive to, the weaker party.

¶17 First, the District Court was correct in concluding that the contractual terms were within HS's reasonable expectations. HS admits that it read and expressly agreed to the

8

terms of the striping contract with MDT and that it understood that Article 108.08 applied to the project. Further, HS had previously bid upon and accepted numerous other contracts that contained similar liquidated damages clauses over the course of at least ten years prior to initiating this action against MDT. Additionally, at the time the District Court issued its order awarding summary judgment in favor of MDT, HS had triggered liquidated damages provisions in at least three separate contracts with MDT. Therefore, HS cannot reasonably claim that the liquidated damages clause was not within its reasonable expectations.

¶18 Second, the provisions of the contract were not unduly oppressive to HS. Article 108.08 set the rate for incomplete projects at $387 per working day. This rate was expressly approved by FHWA, and MDT and had to at least cover its daily costs. Federal law also allowed MDT to include additional amounts for other project related delays or inconveniences. 23 C.F.R. 635.127(c). Given the significant cost to MDT and the obvious danger to the driving public, $387 per working day was not unduly oppressive (notably, the current rate for the same project today is $967). The total amount of damages assessed by MDT ($68,122), although significant, does not itself imply that the contract's provisions were unduly oppressive. HS did not commence work on the project until two months after the scheduled completion date, deliberately abandoned the project, and thereby exposed drivers to significant danger. Therefore, we conclude that the contract's terms, including the liquidated damages provision, were within HS's reasonable expectations and not unduly oppressive.

¶19 Finally, HS's argument that the clause cannot be enforced because MDT's Article 108.08 is applicable to highway construction projects and not maintenance projects is not tenable. 23 C.F.R. 635.103 states expressly that the "policies, requirements, and procedures prescribed in this subpart [contract procedures] shall apply to all Federal-aid highway projects." This project was federally funded and thus, the liquidated damages rates clearly applied to both construction and maintenance projects.

¶20 We hold that the liquidated damages provision was not unconscionable and that the District Court did not err in awarding summary judgment to MDT and enforcing the liquidated damages clause.

¶21 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS