DA 10-0580

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 194

JOSEPH A. GRAZIANO,

        Plaintiff and Appellant,

  v.

STOCK FARM HOMEOWNERS
ASSOCIATION, INC., STOCK
FARM, LLC and DOES 1-50,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DV 09-736
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Alan F. McCormick and William T. Wagner, Garlington, Lohn & Robinson,
                PLLP, Missoula, Montana

        For Appellees:

                David B. Cotner and Joslin E. Monahan, Datsopoulos, MacDonald & Lind,
                P.C., Missoula, Montana

                            Submitted on Briefs:  June 8, 2011
                                    Decided:  August 12, 2011

Filed:

                              _____
                                      Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Plaintiff Joseph A. Graziano ("Graziano") appeals from an order of the Twenty-First Judicial District Court, Ravalli County, granting Defendants' Stock Farm Homeowners Association, Inc. ("Association") and Stock Farm, LLC ("SFLLC") motion to stay proceedings and compel arbitration. We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

## BACKGROUND

¶2 In 2000, Graziano became interested in buying property in Montana. To that end, he received a packet of information from Stock Farm subdivision ("Stock Farm") in April of 2000. Stock Farm is a private community of luxury homes near Hamilton, Montana, which was owned and developed by SFLLC. On July 7, 2000, Graziano purchased Lot 53A of Amended Plat 461357, Ravalli County ("the Lot"), which is located within Stock Farm.

¶3 The property within Stock Farm is subject to Covenants, Conditions, and Restrictions ("CCRs"). The CCRs were recorded on December 31, 1997, in Ravalli County. Prior to finalizing the purchase, Graziano obtained a Preliminary Title Commitment policy which indicated the Lot was encumbered by CCRs. The buy-sell agreement also mentions that title to the Lot is encumbered by CCRs and easements of record. Both the Association and SFLLC assert that the packet of information sent to Graziano in April of 2000 also contained the CCRs applicable to any property purchase within Stock Farm. Graziano claims the CCRs were "not referenced in the letter addressed to Mr. Graziano." The application of the arbitration provision contained in the CCRs is the focus of the present dispute. However,

2

before addressing that issue, we first discuss the disagreements leading to the present litigation.

¶4     As the owner of property in Stock Farm, Graziano is a member of the Association. The Association, a non-profit mutual benefit corporation, was created by SFLLC in 1997. SFLLC maintained control over the Association's Board of Directors (the "Board") until the Association began independent governance. As the governing body of Stock Farm, the Association's principal purpose is to "own, govern, manage, maintain, administer, preserve, control and promote the values and general welfare of the Stock Farm for the beneficial use and overall general welfare of the owners of the individual lots within it, and their successors in interest."

¶5     Several years after Graziano purchased the Lot in Stock Farm, he became concerned about the finances and management of the Association. Graziano attempted to resolve his concerns with the Board, but was less than satisfied with the Board's response, or lack thereof. Ultimately, Graziano's counsel sent a letter to the Board on June 22, 2009, addressing his claims of mismanagement and demanding action on the part of the Board. The letter alleges the Board:

> failed to establish and maintain appropriate reserves for common area improvements, failed to avoid or disclose conflicts of interest, implemented a Use Agreement between the Stock Farm Club, LLC and the Association which is fundamentally unfair and financially disproportionate to the Association and its Members, failed to maintain proper and accurate financial records (including but not limited to improper cost allocations, lack of accurate accounting for cost sharing agreements, lack of reserve accounting, not recording the value of assets contributed to and owned by the Association, not recording liabilities for funds advanced by the developers, not assessing and

3

collecting fair and accurate dues on developer-retained lots, not providing competent accounting staff for the Association since inception, not performing a financial audit for ten years and not providing important financial information to the Members since inception), accepted a financial audit that was not performed in accordance with the AICPA's Auditing and Accounting Guide for Common Interest Realty Associations and possibly accepting substandard roads installed by the developers.

¶6 Graziano then demanded the Board take eight specific actions to remedy the issues. The letter goes on to state that "[n]either Mr. Graziano or his counsel is desirous of negotiating what must be done." The last sentence of the letter states, "The Board must take immediate action and communicate its intent to comply, and a reasonable schedule for complying, with these demands in writing by noon Friday, June 26, 2009, or appropriate legal action will be immediately initiated."

¶7 It appears that the Board never responded to Graziano or his counsel. The Board did communicate to Association members, via a letter, that Graziano was threatening legal action and that Graziano's lawsuit would attach a "notice on each lot which could affect a sale or refinancing."

¶8 Graziano filed his Complaint in October 2009. He asserted the following claims: (1) numerous breaches of fiduciary duties; (2) negligence; (3) violation of the Montana Consumer Protection Act; (4) constructive fraud; (5) defamation; (6) request for declaratory relief; (7) request for injunctive relief; (8) unjust enrichment; and (9) request for an accounting. Graziano sought relief including economic damages, loss of use damages, exemplary and punitive damages, injunctive relief, and attorney's fees.

4

¶9 The Association and SFLLC moved to stay the proceedings and compel arbitration pursuant to Section XVI of the CCRs. That section provides, in relevant part:

16.1 *Agreement to Avoid Costs of Litigation and to Limit Right to Litigate Disputes*. The Association, Declarant, all persons subject to this Declaration, and any person not otherwise subject to this Declaration who agrees to submit to this Section (collectively, "Bound Parties") agree to encourage the amicable resolution of disputes involving the Property,[1] and to avoid the emotional and financial costs of litigation if at all possible. Accordingly, each Bound Party covenants and agrees that all claims, grievances, or disputes between such Bound Party and any other Bound Party involving the Property, including, without limitation, claims, grievances, or disputes arising out of or relating to the interpretation, application, or enforcement of this Declaration, the Bylaws, the Association Rules, or the Articles of Incorporation (collectively "Claim"), except for those Claims authorized in Section 16.2,[2] shall be subject to the [arbitration] procedures set forth in Section 16.3.

* * *

16.3 *Mandatory Procedures for All Other Claims*. Any Bound Party having a Claim ("Claimant") against any other Bound Party ("Respondent") . . . shall not file suit in any court or initiate any proceeding before any administrative tribunal seeking redress or resolution of such Claim until it has complied with the following procedures:
   a. *Notice*. The Claimant shall notify each Respondent in writing of the Claim (the "Notice"), stating plainly and concisely:
      i. The nature of the Claim . . . .
      ii. The basis of the Claim . . . .
      iii. What Claimant wants Respondent to do . . . .
      iv. That Claimant wishes to resolve the Claim by mutual agreement with Respondent . . . .
   b. *Negotiation.*
      i. Each Claimant and Respondent (the "Parties") shall make every reasonable effort to meet in person and confer for the purpose of resolving the Claim by good faith negotiation.

---

[1] The Property refers to certain property in Ravalli County described in an attachment to the CCRs. The Property undisputedly includes Graziano's Lot.
[2] None of the claims authorized by Section 16.2 are applicable here.

5

ii. Upon receipt of a written request from any Party, accompanied by a copy of the Notice, the Board of Directors may appoint a representative to assist the Parties in resolving the dispute by negotiation, if in its discretion it believes its efforts will be beneficial to the Parties and to the welfare of the community.

c. *Mediation.*

i. If the Parties do not resolve the Claim through negotiation within thirty (30) days of the date of the Notice (or [within] such other period as may be agreed upon by the Parties)("Termination of Negotiations"), Claimant shall have thirty (30) additional days within which to submit the Claim to mediation under the auspices of such independent agency providing mediation services upon which the Parties may mutually agree . . . .

\* \* \*

d. *Final and Binding Arbitration.*

i. If the Parties do not resolve the Claim through mediation, the Claimant shall have thirty (30) days following termination (as determined by the mediator) of mediation proceedings ("Termination of Mediation") to submit the Claim to arbitration in accordance with the Commercial Rules of Arbitration of the American Arbitration Association . . . .

ii. This subsection (d) is an agreement of the Bound Parties to arbitrate all Claims except Exempt Claims and is specifically enforceable under the applicable arbitration law of the State of Montana. The arbitration award (the "Award") shall be final and binding, and judgment may be entered upon it in any court of competent jurisdiction to the fullest extent permitted under the laws of the State of Montana.

Graziano opposed the motion, arguing that no valid, enforceable agreement to arbitrate existed.

¶10 The District Court granted the motion to stay the proceedings and compel arbitration, finding that the CCRs were not a contract of adhesion, were a valid waiver of Graziano's right of access to the courts, were within Graziano's reasonable expectations, and thus an

enforceable agreement to arbitrate all the claims set forth in Graziano's complaint. Graziano timely appealed, raising two issues, restated as follows:

¶11 *Issue One: Did the District Court err in finding the CCRs were not a contract of adhesion and were within Graziano's reasonable expectations, and thus enforceable?*

¶12 *Issue Two: Did the District Court err in finding Graziano's claims of breach of fiduciary duty, fraud, and defamation are not personal injury claims exempt from arbitration under § 27-5-114(2)(a), MCA?*

## STANDARD OF REVIEW

¶13 We review a district court's order compelling arbitration de novo. *Woodruff v. Bretz, Inc.*, 2009 MT 329, ¶ 5, 353 Mont. 6, 218 P.3d 486; *Iwen v. U.S. West Direct*, 1999 MT 63, ¶ 17, 293 Mont. 512, 977 P.2d 989. We review a district court's conclusions of law for correctness. *Iwen*, ¶ 17.

## DISCUSSION

¶14 *Issue One: Did the District Court err in finding the CCRs were not a contract of adhesion and were within Graziano's reasonable expectations, and thus enforceable?*

¶15 Graziano argues that the CCRs are a contract of adhesion, and the arbitration provision was not within his reasonable expectations. He argues he did not receive adequate notice or explanation of the CCRs or the arbitration clause contained in the CCRs. He urges us to find the arbitration clause unenforceable.

7

¶16 The Association and SFLLC argue the CCRs are not adhesive and are enforceable. Further, they argue that none of Graziano's claims are personal injury claims, but rather are all related to Stock Farm and its management and as such are subject to arbitration.

¶17 Arbitration is a matter of contract, and a party cannot be required to submit a dispute to arbitration unless he or she has agreed to do so. *Woodruff*, ¶ 7. Parties who agree to arbitrate agree to forgo a judicial forum. *Woodruff*, ¶ 14. When a district court is asked to compel arbitration, the threshold inquiry is whether the parties agreed to arbitrate that dispute. *Woodruff*, ¶ 7. Ordinary state-law rules of contract formation and interpretation apply to arbitration agreements. *Id*.

¶18 Just as in *Woodruff*, we begin our analysis by first determining whether the present arbitration agreement was a contract of adhesion. An adhesion contract is a standard form contract prepared by one party, to be signed by the party in a weaker position (usually a consumer), who adheres to the contract with little or no choice about its terms. *Woodruff*, ¶ 8. The weaker party can either accept or reject the contract without the opportunity to negotiate its terms. *Id*.

¶19 The CCRs here are not a contract of adhesion. First, the CCRs are not a standard form contract without negotiable terms. The CCRs were drafted specifically for the benefit of the *land* within Stock Farm, run with the land, and bind all successive landowners. Sections 70-17-201 to -204, MCA. Further, Graziano has the ability to change the terms of the CCRs. Graziano may not have had the ability to negotiate the terms of the original CCRs, but it is within his power to change and amend the CCRs in accordance with the

8

amendment provisions in Section XVII of the CCRs. While we conclude these particular CCRs do not constitute a contract of adhesion, we do not foreclose the possibility that a future plaintiff could demonstrate that land use covenants, conditions, and restrictions are adhesive. We simply find that given the facts of this case, the CCRs in question are not adhesive.

¶20 Even if the CCRs did constitute a contract of adhesion, that alone does not make the arbitration clause unenforceable. *Woodruff*, ¶ 13. Assuming a contract of adhesion exists, Graziano must still show the arbitration clause either (1) was not within his reasonable expectations, or (2) was within his reasonable expectations, but when considered in context, is unduly oppressive, unconscionable, or against public policy. *Id*. Graziano has only argued the first prong; therefore, we limit our analysis to whether or not the arbitration clause was within Graziano's reasonable expectations.

¶21 Reasonable expectations derive from all of the circumstances surrounding the execution of a contract, such as the business experience and sophistication of the consumer (here Graziano), any routine practices between the parties established through prior dealings, whether the consumer studied the agreement and understood it, whether the consumer had the advice or representation of counsel, and whether the provisions of the agreement were explained to the consumer. *Woodruff*, ¶ 15.

¶22 We conclude, given all the surrounding circumstances, the arbitration clause was within Graziano's reasonable expectations. First, and significantly, Graziano had notice of the CCRs. While he claims the CCRs were not mentioned in the letter accompanying the

9

original packet of materials sent by Stock Farm, that alone is not dispositive. Both the buy-sell agreement and the title report indicate the Lot was encumbered by CCRs and easements of record. The buy-sell agreement also states that "Seller has delivered or made available to Buyer [Graziano] copies of the covenants, conditions, restrictions . . . ." Graziano had actual notice, before finalizing his purchase, that the Lot was encumbered by CCRs. Even if this did not constitute actual notice, Graziano is still charged with constructive notice because the CCRs were recorded. *See Kosel v. Stone*, 146 Mont. 218, 222, 404 P.2d 894, 896-97 (1965).

¶23 Second, Graziano is not an ordinary citizen with relative lack of sophistication in such matters, such as the consumers in *Woodruff*, *Kortum-Managhan v. Herberger's NBGL*, 2009 MT 79, 349 Mont. 475, 204 P.3d 693; and *Kloss v. Edward D. Jones & Co.*, 2002 MT 129, 310 Mont. 123, 54 P.3d 1. Graziano is the former Chief Financial Officer of Apple Computer, Inc. ("Apple") and has personal experience with arbitration agreements. Graziano's separation agreement with Apple contained an arbitration provision. Graziano's counsel at the time explained to him the arbitration clause.

¶24 Addressing the remaining factors, we find there were no prior dealings between Graziano, Stock Farm, and the Association, and it appears that no one from Stock Farm explained the CCRs to Graziano, nor was Graziano represented by counsel. However, these factors do not automatically tip the balance in Graziano's favor. In an affidavit submitted to the District Court, Graziano states that no one explained the CCRs to him, that he did not know the CCRs contained language that would affect his rights, and that he was not represented by counsel. Graziano does not say he did not know of or read the CCRs, only

10

that they were not explained by Stock Farm or the Association. We find Graziano's affidavit self-serving in light of his extensive business experience and that it constitutes "weak evidence" regarding his understanding of his purchase of the Lot, *see Culbertson-Froid-Bainville Health Care Corp. v. JP Stevens & Co., Inc.*, 2005 MT 254, ¶ 19, 329 Mont. 38, 122 P.3d 431, especially because he attempts to *enforce* portions of the CCRs against Stock Farm and the Association (hence the present lawsuit), yet seeks to personally escape the effect of the arbitration provision. Despite the failure to explain the CCRs, Graziano is a sophisticated businessman with prior experience with arbitration provisions and purchased the Lot with ample notice that the property was subject to CCRs.

¶25 After reviewing all the surrounding circumstances, we conclude the CCRs are not a contract of adhesion, and the arbitration provision contained within the CCRs was within Graziano's reasonable expectations. Therefore, we agree with the District Court's finding that the arbitration provision is valid and enforceable.

¶26 *Issue Two: Did the District Court err in finding Graziano's claims of breach of fiduciary duty, fraud, and defamation are not personal injury claims exempt from arbitration under § 27-5-114(2)(a), MCA?*

¶27 Graziano argues that even if the arbitration clause is valid and enforceable, § 27-5-114(2)(a), MCA, exempts all his constructive fraud claims, including breaches of fiduciary duties, and his defamation claim from the operation of the arbitration clause. He also appears to argue that if one claim is exempt from arbitration under the statute, all claims are then exempt from arbitration.

11

¶28  The Association and Stock Farm argue that none of Graziano's claims arise out of personal injury, and thus none of his claims are exempt from arbitration under § 27-5-114(2)(a), MCA. They urge us to uphold the District Court's conclusion that none of Graziano's claims are exempt from the arbitration provision in the CCRs.

¶29  The parties agree that the interpretation of the arbitration provision in this case is governed by Montana law. Section 27-5-114, MCA, provides, in relevant part:

**Validity of arbitration agreement -- exceptions**.

(2) A written agreement to submit to arbitration any controversy arising between the parties after the agreement is made is valid and enforceable except upon grounds that exist at law or in equity for the revocation of a contract. Except as permitted under subsection (3), this subsection does not apply to:

(a) claims arising out of personal injury, whether based on contract or tort.

Subsection (3) does not apply in the present case.[3]

¶30  The issue we must decide is whether any of Graziano's claims arise out of personal injury, thus making them exempt from the arbitration provision of the CCRs. We conclude that Graziano's defamation claim arises from personal injury and is exempt from arbitration, however all Graziano's other claims involve "the Property" as defined in the CCRs and must be submitted to arbitration pursuant to Section XVI of the CCRs.

---

[3]  Subsection (3) provides "A written agreement between members of a trade or professional organization to submit to arbitration any controversies arising between members of the trade or professional organization after the agreement is made is valid and enforceable except upon grounds that exist at law or in equity for the revocation of a contract."

¶31     The CCRs define the scope of its arbitration provision very broadly, and, with very limited exceptions, covers "all claims, grievances, or disputes between such Bound Party and any other Bound Party involving the Property, including, without limitation, claims, grievances, or disputes arising out of or relating to the interpretation, application, or enforcement of this Declaration, the Bylaws, the Association Rules, or the Articles of Incorporation."   However, this broad provision cannot void the statutory exceptions to arbitration agreements.

¶32     In the context of civil liability, "injury" is defined as "two kinds: (a) to the person; and (b) to the property."  Section 27-1-106, MCA.  There is no statutory definition of "personal injury" under Title 27, MCA, however, § 2-9-101, MCA, provides some guidance here. Section 1-2-107, MCA (when a word or phrase is defined in any part of the MCA, "such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears.")   Section 2-9-101, MCA, regarding governmental liability, defines personal injury as "any injury resulting from libel, slander, malicious prosecution, or false arrest and any bodily injury, sickness, disease, or death sustained by any person and caused by an occurrence for which the state may be held liable."

¶33     With these definitions in mind, we turn to Graziano's complaint.  A review of the complaint reveals that the bulk of Graziano's claims relate to "the Property" and its management, and the alleged resulting injuries are not personal to Graziano but to Stock Farm as a community and the Association members as a whole.  The only claim personal to Graziano is his defamation claim.  While that claim may have its origins in the disputes

13

regarding the management of "the Property," that dispute does not give rise to the defamation claim. Rather, the basis of the claim is the allegedly defamatory statements made by the Association about Graziano, whatever context the statements were made in. In other words, the personal injury claim (defamation) arises from the allegedly defamatory statements made about Graziano.

¶34 We do not agree with Graziano's argument that because he has asserted one claim that is not subject to arbitration, all his claims are not subject to arbitration. To do so would effectively void the Uniform Arbitration Act, Title 27, Chapter 5, MCA, and allow any plaintiff to circumvent the Act by simply asserting one personal injury claim amongst a slew of other claims clearly subject to arbitration.

¶35 Because we conclude that Graziano's defamation claim is a personal injury claim, it is exempt from the arbitration provision by operation of § 27-5-114(2)(a), MCA. However, all the remaining claims are subject to the valid and enforceable arbitration provision and must be arbitrated pursuant to Section XVI of the CCRs.

## CONCLUSION

¶36 We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH

/S/ BETH BAKER
/S/ JIM RICE

Justice James C. Nelson specially concurs.

¶37    I agree with the result of the Court's Opinion. I do not necessarily agree that the CCRs here were not adhesive, nor do I agree that, as a general proposition, land use covenants, restrictions and conditions imposed unilaterally by the developer or owner upon a subdivision cannot be adhesive. In my view, upon appropriate proof of the criteria set forth in *Woodruff v. Bretz, Inc.*, 2009 MT 329, ¶ 8, 353 Mont. 6, 218 P.3d 486, a plaintiff could prevail on a claim that land use covenants, restrictions and conditions are adhesive. Imposing and enforcing pre-dispute arbitration requirements in such circumstances is nothing more than a means of depriving landowners of their constitutional rights of access to the courts and to a jury trial under Article II, Sections 16 and 26, respectively, of the Montana Constitution.

¶38    That said, in this case I agree that, even assuming that the CCRs were adhesive, the arbitration provisions were within Graziano's reasonable expectations for the reasons set forth in ¶¶ 22-25 of the Opinion. I would not go further than that.

¶39    Land use covenants, restrictions and conditions might arguably benefit the land, and the landowner may be granted some illusory—albeit impossible, as a practical matter— method of amending the covenants, restrictions and conditions. *See* Opinion, ¶ 19.

15

Nonetheless, the landowner should not be bound by a pre-dispute arbitration clause imposed by the developer without negotiation on what amounts to be a "take it or leave it"—or, rather, "buy it and you're stuck with them"—basis. A landowner should retain the right to have disputes over the interpretation and enforcement of land use covenants, restrictions and conditions resolved in court with a jury; forcing mandatory pre-dispute arbitration on landowners should not be a prerequisite to property ownership.

¶40 With those caveats, I specially concur with the Court's Opinion.


/S/ JAMES C. NELSON