# ROWLAND DAY and JAIMIE DAY,
## both individually and as co-trustees of the DAY FAMILY TRUST, and CHARTIS PROPERTY CASUALTY COMPANY a/s/o ROWLAND DAY and JAIMIE DAY,
### Plaintiffs and Appellees,
### v.
## CTA, INC.,
### Defendant and Appellant.

No. DA 13-0730.
Submitted on Briefs April 9, 2014.
Decided May 7, 2014.
2014 MT 119.
375 Mont. 79.
324 P.3d 1205.

For Appellant: **Scott Hagel**; Crowley Fleck PLLP; Kalispell.

For Appellees: **Amy Eddy**, **David Sandler**; Eddy Sandler Trial Attorneys PLLP; Kalispell.

JUSTICE COTTER delivered the Opinion of the Court.

¶1 CTA Inc. (CTA) appeals from an order of the Eleventh Judicial

District Court, Flathead County, denying CTA's motion for summary judgment and granting Rowland and Jaimie Days' (Days) motion for partial summary judgment. We reverse and remand for further proceedings consistent with this opinion.

## ISSUE

¶2 We restate the dispositive issue on appeal as:

¶3 *Did the District Court err in denying CTA's motion for summary judgment and granting the Days' motion for partial summary judgment based on its finding that the arbitration clause in the contract was unenforceable?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 This dispute arises out a standard-form contract[1] for professional services entered into by the Days, property owners in Flathead County, and CTA, a firm offering architectural, engineering, and construction management services. On May 11, 2012, the Days filed a complaint against CTA, Martel Construction, Inc., and John Does 1-5, alleging that the Defendants negligently designed and constructed the Days' home, resulting in property damage, and that CTA breached its contract with the Days. On July 12, 2012, CTA filed a motion to dismiss pursuant to M. R. Civ. P. 12(b)(6) "on grounds that the contract giving rise to the dispute in this matter is subject to mandatory arbitration and the [c]ourt lacks subject matter jurisdiction to resolve the dispute." Because CTA submitted a copy of the contract with its motion, the court converted the motion to dismiss to a motion for summary judgment pursuant to M. R. Civ. P. 12(d). The Days filed a cross-motion for partial summary judgment, alleging that the arbitration clause contained in the contract was unenforceable. On October 21, 2013, the District Court issued an order denying CTA's motion for summary judgment and granting the Days' motion for partial summary judgment. CTA timely appealed. The District Court stayed litigation of the case pending resolution of CTA's appeal.

¶5 CTA argues that the District Court erred in concluding that the arbitration clause in the contract was invalid and unenforceable. CTA maintains that because the contract was not a contract of adhesion, the

---

[1] A "standard-form contract" is "[a] usu. preprinted contract containing set clauses, used repeatedly by a business or within a particular industry with only slight additions or modifications to meet the specific situation." *Black's Law Dictionary* 373 (Bryan A. Garner ed., 9th ed., West 2009).

District Court incorrectly considered the factors enumerated in *Kortum-Managhan v. Herbergers NGBL*, 2009 MT 79, ¶ 27, 349 Mont. 475, 204 P.3d 693. The Days counter that the District Court correctly found that there was no mutual consent to be bound by arbitration because there was no knowing, intelligent, and voluntary waiver of the right to a jury trial and access to the courts by the Days.

## STANDARD OF REVIEW

¶6 When a district court converts a motion to dismiss into a motion for summary judgment, we use the same standard of review applied to an appeal from a grant or denial of summary judgment. *Doe v. Community. Med. Ctr.*, 2009 MT 395, ¶ 15, 353 Mont. 378, 221 P.3d 651. We review a district court's summary judgment ruling de novo, applying the same criteria as a district court pursuant to M. R. Civ. P. 56(c). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Doe*, ¶ 15 (citations omitted).

## DISCUSSION

¶7 *Did the District Court err in denying CTA's motion for summary judgment and granting the Days' motion for partial summary judgment based on its finding that the arbitration clause in the contract was unenforceable?*

¶8 "Arbitration is a matter of contract," *Graziano v. Stock Farm Homeowners Assn.*, 2011 MT 194, ¶ 17, 361 Mont. 332, 258 P.3d 999 (citation omitted), and "[a]greements to arbitrate generally represent valid and enforceable contracts under Montana law." *Kelker v. Geneva-Roth Ventures, Inc.*, 2013 MT 62, ¶ 11, 369 Mont. 254, 303 P.3d 777 (citations omitted). We evaluate an arbitration clause to determine whether the clause was unconscionable under generally applicable Montana contract law. A contract is unconscionable if it is a contract of adhesion and if the contractual terms unreasonably favor the drafter. *Kelker*, ¶ 29 (citation omitted).

¶9 We begin our analysis by determining whether the contract between the parties was a contract of adhesion. A contract of adhesion is a standard-form contract prepared by one party, to be signed by the party in a weaker position who adheres to the contract with little or no choice about its terms. *Graziano*, ¶ 18 (citation omitted). The weaker party accepts or rejects the contract without an opportunity to negotiate its terms. *Kortum-Managhan*, ¶ 23; *Graziano*, ¶ 18.

¶10 The contract between the Days and CTA is not a contract of

adhesion. Though the contract was a standard-form contract, there is no dispute that the Days had the ability to change at least some of the terms of the contract.[2] In an affidavit, Rowland Day stated he has no recollection of meeting with or talking to CTA's architect, signing the contract, reading the arbitration clause, or discussing the arbitration clause with anyone. This affidavit does not refute the evidence in the record that the parties negotiated some of the terms of the contract. Moreover, the District Court specifically found there was no disparity in bargaining power as Rowland Day is a securities attorney in California, nor does Day now argue there was a disparity. Disparity in bargaining power is an essential element of a contract of adhesion. *See e.g. Zigrang v. U.S. Bancorp Piper Jaffray, Inc.* , 2005 MT 282, ¶ 14, 329 Mont. 239, 123 P.3d 237 (citation omitted) ("Contracts of adhesion arise when a party possessing superior bargaining power presents a standardized form of agreement to a party whose choice remains either to accept or reject the contract without the opportunity to negotiate its terms.").

¶11 Even if the contract did constitute a contract of adhesion, this factor alone does not make the arbitration clause unenforceable. *Graziano,* ¶ 20 (citation omitted). An arbitration clause will be enforced unless the clause (1) was not within a party's reasonable expectations, or (2) was within the party's reasonable expectations, but when considered in context, is unduly oppressive, unconscionable, or against public policy. *Graziano,* ¶ 20 (citation omitted); *Kelker,* ¶ 17 (citing *Kortum-Managhan,* ¶ 23).[3] This Court has analyzed the reasonable expectations of a party entering an arbitration contract using the factors enumerated in *Woodruff v. Bretz, Inc.*, 2009 MT 329, ¶ 15, 353 Mont. 6, 218 P.3d 486, and *Kortum-Managhan. See Graziano,* ¶ 21;

---

[2] The parties struck or supplemented provisions of the contract concerning, inter alia, hourly billing, the owners' responsibilities, additional services to be provided by CTA, and termination of the contract.

[3] This test mirrors the test used to analyze the possible unconscionability of contracts generally. *Kelker,* ¶ 28 ("This Court uses the same test and analyzes the same factors for possible unconscionability of arbitration clauses as we use to analyze the possible unconscionability of contracts generally."); *Hwy. Specialties, Inc., v. State*, 2009 MT 253, ¶ 12, 351 Mont. 527, 215 P.3d 667 (citation omitted) (Unconscionability is a two-step inquiry: (1) whether the contract is a contract of adhesion; and (2) whether the contractual terms are unreasonably favorable to the drafter, including whether the provision is within the reasonable expectations of the weaker party or is unduly oppressive to the weaker party.).

*Kelker,* ¶ 33. Under *Woodruff,* "reasonable expectations derive from all of the circumstances surrounding the execution of the contract, such as the consumer's business experience and sophistication, any routine practice between the parties established through prior dealings, whether the consumer studied the agreement and comprehended its terms, whether the consumer had the advice or representation of counsel, and whether the challenged provision and the consequences of the provision were fully and adequately explained to the consumer." *Woodruff,* ¶ 15. The *Kortum-Managhan* factors are:

> whether there were any actual negotiations over the waiver provision; whether the clause was included on a take-it-or-leave-it basis as part of a standard-form contract; whether the waiver clause was conspicuous and explained the consequences of the provision (e.g. waiver of the right to trial by jury and right of access to the courts); whether there was disparity in the bargaining power of the contracting parties; whether there was a difference in business experience and sophistication of the parties; whether the party charged with the waiver was represented by counsel at the time the agreement was executed; whether economic, social or practical duress compelled a party to execute the contract (e.g. where a consumer needs phone service and the only company or companies providing that service require execution of an adhesion contract with a binding arbitration clause before service will be extended); whether the agreement was actually signed or the waiver provision separately initialed; whether the waiver clause was ambiguous or misleading; and whether the party with the superior bargaining power lulled the inferior party into a belief that the waiver would not be enforced.

*Kortum-Managhan,* ¶ 27.

The *Kortum-Managhan* factors were to be used to determine "whether an individual deliberately, understandingly and intelligently waived their [sic] fundamental constitutional rights to trial by jury and access to the courts." *Kortum-Managhan,* ¶ 27; *Kelker,* ¶ 55 (Baker, J., dissenting). However, in *Kelker,* we considered the totality of the factors in determining whether the arbitration clause fell within Kelker's reasonable expectations. *Kelker,* ¶ 33. Thus, the inquiry of whether a party voluntarily, knowingly, and intelligently waived its rights has become part of the inquiry of the party's reasonable expectations. Because the *Woodruff* and *Kortum-Managhan* factors are so similar, and because of the manner in which this case was briefed, we apply the *Kortum-Managhan* factors to determine whether

the arbitration clause fell within the Days' reasonable expectations. The District Court determined that these factors weigh against enforcement of the arbitration clause. We disagree.

¶12 The Days do not contend they were motivated by duress to enter into the contract. The arbitration clause was in the body of the contract under a bolded, capitalized heading, and the clause was not ambiguous or misleading. As noted above, Rowland Day is not an ordinary citizen with a relative lack of sophistication in such matters; he is a securities attorney. The District Court concluded that this fact "does not establish that [Day's] waiver of fundamental constitutional rights was intelligently, knowingly and voluntarily waived" because "[s]omeone who practices in the area of securities in another state is not necessarily familiar with Montana law regarding agreements to arbitrate." Familiarity with Montana contract law regarding arbitration clauses is not, however, required in order for a waiver of rights to be valid. Rowland Day's professional experience and sophistication make him more similar to the plaintiff in *Graziano*, the former Chief Financial Officer of Apple Computer, Inc., than to the consumers in *Woodruff, Kortum-Managhan,* and *Kloss v. Edward D. Jones & Co.*, 2002 MT 129, 310 Mont. 123, 54 P.3d 1 (preempted in part by the Federal Arbitration Act). *See Graziano,* ¶ 23.

¶13 Graziano had extensive business experience and had personal experience with arbitration agreements. His separation agreement with Apple Computer, Inc. contained an arbitration provision that his counsel at the time explained to him. *Graziano,* ¶ 23. In an affidavit, Graziano stated that no one explained the Covenants, Conditions, and Restrictions (CCRs) to him, that he did not know the CCRs contained language affecting his rights, and that he was not represented by counsel. This Court found the affidavit self-serving in light of Graziano's extensive business experience. We concluded that the affidavit constituted "weak evidence" regarding his understanding of the purchase of his property, especially because Graziano attempted to *enforce* portions of the CCRs against the Defendants while seeking to personally escape the effect of the arbitration provision. *Graziano,* ¶ 24 (emphasis in original).

¶14 ■ Rowland Day's affidavit similarly constitutes "weak evidence" regarding his understanding of the contract in light of his professional experience. It is unsurprising that Rowland Day has no recollection of signing the contract or of the negotiations leading up to it as twelve years passed between execution of the contract and the filing of the complaint. However, Rowland Day's lack of recollection does not

compel a finding that the arbitration clause was outside of his reasonable expectations in 2000, nor does he assert in his affidavit that the clause *was* outside his expectations. Moreover, like Graziano, the Days attempt to enforce portions of the contract against CTA, yet seek to personally escape the effect of the arbitration provision. *See Graziano,* ¶ 24. We conclude that, given the surrounding circumstances, the arbitration clause was within the Days' reasonable expectations. We further conclude that the arbitration clause was not oppressive, unconscionable, or against public policy. The arbitration clause is therefore enforceable. *Graziano,* ¶ 20; *Kelker,* ¶ 17 (citation omitted).

¶15 Because this issue is dispositive, we need not address CTA's argument that the District Court erred in disregarding the mandatory mediation provision in the contract.

## CONCLUSION

¶16 For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

CHIEF JUSTICE McGRATH, JUSTICES WHEAT, RICE and McKINNON concur.