CHIEF JUSTICE McGRATH
delivered the Opinion of the Court.
¶1 Tenants Matthew Summers and Heidi Ames (collectively Summers) appeals from findings of fact, conclusions of law, and *125 judgment of the Fourth Judicial District Court, Missoula County, awarding landlord Crestview Apartments (Crestview) recovery of $9,442.36 with interest and costs. We reverse.
¶2 Summers presents multiple issues on appeal, primarily asserting violations of the Residential Tenants’ Security Deposits Act (Security Deposits Act) and the Montana Residential Landlord and Tenant Act of 1977 (Landlord and Tenant Act). In particular, Summers claims that Crestview illegally deducted future unpaid rent from the security deposit, wrongfully imposed accelerated rent upon breach of the lease, impermissibly required that tenants would be obligated to pay attorney fees in any dispute, failed to properly mitigate damages, and utilized misleading language in the written lease agreement. Summers also challenged Crestview’s imposition of collection costs and claimed that Crestview misrepresented consumers’ rights in violation of the Consumer Protection Act. Crestview cross-appeals the District Court ruling that limited its attorney fees award to $500.
¶3 We restate the issues, finding the following issues dispositive:
¶4 Whether Crestview wrongfully deducted future unpaid rent from the security deposit.
¶5 Whether the Landlord and Tenant Act prohibits an accelerated rent provision in a lease agreement.
¶6 Whether the Landlord and Tenant Act prohibits a lease agreement from imposing an obligation on the tenant to pay the landlord’s attorney fees.
BACKGROUND
¶7 This is a landlord-tenant dispute in which tenants seek compensation for damages incurred after they breached their lease. Matthew Summers and Heidi Ames rented an apartment from Crestview Apartments on June 29,2006. The written lease agreement was a 14-page document in small type print. The rent was $935 per month with a combined security and pet deposit of $2,170, for a term of one year. Summers obtained financing to buy a house and in late August 2006, informed Crestview that he would terminate the lease. On September 27, 2006, Crestview wrote to Summers and acknowledged the notice to vacate effective November 1, 2006.
¶8 A Crestview representative suggested that tenants terminating a lease often offer incentives to get people to move in to their apartment and finish their lease. Accordingly, Summers placed a classified ad in the newspaper for two weeks advertising the apartment at $935 per month with the first month rent free. Summers *126 estimated he had 20-30 responses to the ad and several prospective tenants were shown the apartment and sent to the Crestview rental office. Crestview acknowledged that it did nothing specific nor took any extra effort to rent the unit. Crestview included the apartment with its other vacant units offered to prospective tenants and ran regular advertising in newspapers and online. Crestview’s property manager testified that she was unaware of Summers’ ads and the offer of one month’s free rent. Additionally, Crestview’s policy was to offer an apartment with a breached lease at the rate set by the breached lease. However, that information was only available on Crestview’s availability list and was not promoted in their advertising, which showed similar apartments for $980 per month. After Summers terminated the tenancy, Crestview had 26 similar apartments for rent, at least 12 of which were rented while Summers’ apartment remained vacant.
¶9 Summers moved out of the apartment on October 13, 2006 with rent paid through the end of that month. On November 2, 2006, Crestview wrote Summers explaining that $168.25 would be deducted from the security deposit and the remainder would be retained until June 30 or until the apartment was re-rented. On November 6, 2006, Crestview issued a three-day notice to quit or pay rent for the month of November. The letter did not explain how Crestview would proceed if rent was not paid. On November 15, 2006, Crestview issued a “Statement of Deductions from the Security Deposit” showing total deductions, including rent through the end of the lease in June, of $6,505.75, including credit for the security deposit of $2,170. The next day, November 16, Crestview’s collection agency notified Summers that he owed $9,758.63, the balance from the accelerated rental payments plus a 50% collection fee. Crestview testified that its normal policy was to give tenants two weeks to respond before turning an account over to collections, but had no explanation as to why it turned this account over the day after giving notice to Summers instead of following its normal policy. Summers’ apartment was finally rented on June 1, 2007, just one month prior to expiration of the lease.
¶10 Summers sued for wrongful withholding of the security deposit, based on the Security Deposits Act, violations of the Landlord and Tenant Act, lack of mitigation efforts, and misleading language *127 contained in the written lease agreement.[1] Following a bench trial, the District Court entered findings of fact, conclusions of law, and judgment on August 7,2009, awarding Crestview recovery of $9,442.36 with interest and costs. Summers appeals.
STANDARD OF REVIEW
¶11 This Court reviews the findings of a trial court sitting without a jury to determine if they are clearly erroneous. M. R. Civ. P. 52(a); Solem v. Chilcote, 274 Mont. 72, 76, 906 P.2d 209, 211-12 (1995). A district court’s findings are clearly erroneous if they are not supported by substantial credible evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. Solem, 274 Mont. at 76, 906 P.2d at 212. We review a district court’s conclusions of law to determine if they are correct. Solem, 214 Mont. at 76, 906 P.2d at 212.
DISCUSSION
¶12 Whether Crestview wrongfully deducted future unpaid rent from the security deposit.
¶13 Summers argues that a lease provision permitting Crestview to deduct from the security deposit future damages in the form of accelerated rent is prohibited bylaw. Section 70-25-201(1), MCA, of the Security Deposits Act, provides:
A landlord renting property covered by this chapter may deduct from the security deposit a sum equal to the damage alleged to have been caused by the tenant, together with a sum equal to the unpaid rent, late charges, utilities, penalties due under lease provisions, and other money owing to the landlord at the time of deduction, including rent owed under 70-24-441(3), and a sum for actual cleaning expenses, including a reasonable charge for the landlord’s labor.
(Emphasis added.) The statute then provides that, “[a] person may not deduct or withhold from the security deposit any amount for purposes other than those set forth in this section.” Section 70-25-201(4), MCA. Section 70-25-202(1), MCA, provides:
Every landlord, within 30 days subsequent to the termination of *128 a tenancy or within 30 days subsequent to a surrender and acceptance of the leasehold premises, whichever occurs first, shall provide the departing tenant with a written list of any rent due and any damage and cleaning charges, brought after the provisions of 70-25-201 have been followed, with regard to the leasehold premises that the landlord alleges are the responsibility of the tenant. Delivery of the list must be accompanied by payment of the difference, if any, between the security deposit and the permitted charges set forth in 70-25-201.
Summers contends that § 70-25-201(4), MCA, prohibits withholding future rent from the security deposit, and the security deposit should have been returned, minus any cleaning deductions, 30 days after termination of the tenancy in October.
¶14 Crestview argues that § 70-24-201, MCA, allows a rental agreement to include terms not prohibited by statute, and that acceleration clauses are common in Montana mortgages without addressing why such clauses also apply to leases. Crestview claims a right to collect unpaid future rent as damages. Crestview argues that, even if deducting a portion of this rent from the security deposit was illegal, the security deposit was less than the final rent owed, and therefore there was no net difference in the final judgment against Summers.
¶15 Section 70-25-201(1), MCA, clearly allows a landlord to deduct from the security deposit “money owing to the landlord at the time of deduction, including rent owed” (emphasis added). Here however, Crestview deducted future rent by charging Summers rent in November for the remaining eight months of the lease term. This accelerated rent was not owed to Crestview at the time of deduction on November 2, 2006. Therefore, § 70-25-201(1), MCA, prohibited Crestview from deducting the accelerated future rent from the security deposit.
¶16 Furthermore, pursuant to § 70-25-202(1), MCA, “within 30 days subsequent to the termination of a tenancy or within 30 days subsequent to a surrender and acceptance of the leasehold premises,” Crestview was required to provide Summers with “a written list of any rent due and any damage and cleaning charges, brought after the provisions of 70-25-201 have been followed.” Summers vacated the apartment on October 13, 2006. Therefore, Crestview had until November 12, 2006, to provide Summers with a written accounting of any rent due. Even if Crestview still held Summers accountable for rent after termination of the lease, by withholding the entire $2,170 *129 security deposit, Crestview violated § 70-25-202(1), MCA, by including rent allegedly owed beyond the 30-day time limit provided for settling deductions from the security deposit.
¶17 Crestview could not deduct future rent from the security deposit and withholding accelerated rent from the security deposit was illegal under § 70-25-201(1), MCA.
¶18 Whether the Landlord and Tenant Act prohibits an accelerated rent provision in a lease agreement.
¶19 Summers argues that accelerating the future rental balance and demanding it from the tenant converts the lease into a judgment against the tenant. Summers also contends this improperly imposes financial burdens on the tenant (including effects on credit), and conflicts with the landlord’s duty to mitigate damages. Summers claims that accelerated rent is a liquidated damage provision and that § 28-2-721, MCA, prohibits liquidated damages, except when the amount of actual damage sustained by a breach would be impracticable or extremely difficult to fix.
¶20 The actual damages sustained by this breach were known and were not impracticable or extremely difficult to fix. Upon re-renting the apartment on June 1, 2007, Crestview knew exactly how much Summers owed as a result of breaching the lease and could have sent a final statement at that time. Crestview counters that liquidated damages are presumed enforceable unless the opposing party establishes that they are unconscionable. Arrowhead Sch. Dist. No. 75 v. Klyap, 2003 MT 294, ¶ 54, 318 Mont. 103, 79 P.3d 250.
¶21 The Landlord and Tenant Act provides that if a court finds, as a matter of law, that “a rental agreement or any provision thereof is unconscionable, the court may refuse to enforce the agreement or enforce the remainder of the agreement without the unconscionable provision to avoid an unconscionable result.” Section 70-24-404(l)(a), MCA. An accelerated rent provision in a lease agreement is unenforceable if it is unconscionable.
¶22 Unconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions. Iwen v. U.S. West Direct, 1999 MT 63, ¶ 31, 293 Mont. 512, 977 P.2d 989; Arrowhead, ¶ 48. Crestview drafted the lease and Summers had no meaningful choice regarding acceptance of the accelerated rent provision. Summers could either accept or reject Crestview’s standardized lease agreement without an opportunity to negotiate its terms. Crestview’s property manager *130 testified that tenants had never asked to change a pre-printed portion of their lease agreement.
¶23 In other contexts, we have determined that a variety of standardized forms of agreement are contracts of adhesion. Iwen, ¶ 29 (“U.S. West Direct’s directory advertising order is a standardized form agreement, the terms of which Iwen was unable to negotiate and for which his only choice was to accept or reject.”); Kloss v. Edward D. Jones & Co., 2002 MT 129, ¶ 27, 310 Mont. 123, 54 P.3d 1 (“Kloss’ [securities] agreements with Jones are clearly contracts of adhesion. They were standardized forms prepared by Jones and presented to Kloss who had no opportunity to negotiate the terms of the contracts if she chose to invest through Jones.”); Larsen v. W. States Ins. Agency, 2007 MT 270, ¶ 14, 339 Mont. 407, 170 P.3d 956 (Employment agreement “was a standardized agreement, prepared by the superior party, that the weaker party had no opportunity to negotiate its terms, and the superior party did not explain it to the weaker party. The agreement between Larsen and Western qualifies as a contract of adhesion.”); Woodruff v. Bretz, Inc., 2009 MT 329, ¶ 9, 353 Mont. 6, 218 P.3d 486 (Bretz’s purchase contract is a “standardized form of agreement drafted by Bretz which, as the District Court implicitly found, had superior bargaining power. Moreover, the contract was presented to Woodruff whose choice was either to accept or to reject it without the opportunity to negotiate the preprinted terms. The contract thus qualifies as one of adhesion.”).
¶24 The remaining question is whether the accelerated rent provision unreasonably favors Crestview. The accelerated rent provision permitted Crestview to collect eight months rent that was not then due upon Summers’ breach of the lease. Crestview unreasonably benefited from Summers’ breach by collecting rent not yet due, while simultaneously offering the apartment for rent. Under this provision, Summers would have to pay in advance for an apartment that was no longer in his possession. Crestview had no incentive to rent the vacant apartment since it had already charged rent through the end of the lease term.
¶25 Significantly, the Landlord and Tenant Act imposes a duty to mitigate damages. Section 70-24-401(1), MCA. Summers contends that Crestview acknowledged that it did nothing specific nor took any extra effort to rent the unit. In fact, Crestview’s property manager was unaware of Summers’ offer of one month’s free rent and made no effort to inform potential tenants of the lower rent available for Summers’ apartment. Crestview claims that it did what it always did to rent an *131 apartment, and the District Court concluded that the “landlord acted reasonably to mitigate tenant’s damages by placing the premises in its pool of available units shortly after the tenants physically vacated.” Crestview leased 12 other apartments from December 2006 through May 2007.
¶26 This Court adheres to the following well-established principles of Montana contract law:
The rule in Montana is that a nondefaulting party in a contractual arrangement must act reasonably under the circumstances so as not to unnecessarily enlarge damages caused by default. Whether the injured party violated his duty to mitigate damages is a question for the trier of fact when there is conflicting evidence. Bronken’s Good Time Co. v. J.W. Brown & Assoc. (1983), 203 Mont. 427, 432-33, 661 P.2d 861, 864 (citations omitted). Furthermore, we recognize that a “damaged party is only expected to do what is reasonable under the circumstances and need not embark upon a course of action which may cause further detriment to him.” Romain v. Earl Schwartz Co. (1989), 238 Mont. 500, 504, 779 P.2d 54, 56-7.
Gierke v. Walker, 279 Mont. 349, 354-55, 927 P.2d 524, 527 (1996).
¶27 An accelerated rent provision in a lease agreement undermines a landlord’s duty to mitigate damages. Recovery of accelerated rent reduces the landlord’s incentive to re-rent the apartment promptly. The tenant must pay for the remaining term of the lease before the rent would otherwise be due and without receiving any of the attendant benefits of possession of the apartment. Thus, we conclude that irrespective of a factual determination by the District Court that Crestview acted reasonably to mitigate damages, as a matter of law an accelerated rent provision in a lease agreement conflicts with the landlord’s duty to mitigate damages under § 70-24-401(1), MCA.[2]
¶28 Clearly this accelerated rent provision unreasonably favors Crestview. A more equitable result would have been for Crestview to continue charging Summers rent on a monthly basis until the apartment was rented to a new tenant. This approach would not unreasonably favor either party, while maintaining the intent of the *132 original agreement. Thus, we conclude that the accelerated rent provision is unconscionable and therefore unenforceable.
¶29 Although Crestview cannot collect accelerated rent upon a tenant’s breach of a lease, Crestview does retain other remedies under the Landlord and Tenant Act. Specifically, § 70-24-427(1), MCA, provides, “[i]f the rental agreement is terminated, the landlord has a claim for possession and for rent and a separate claim for actual damages for any breach of the rental agreement.”
¶30 Whether the Landlord and Tenant Act prohibits a lease agreement from imposing an obligation on the tenant to pay the landlord’s attorney fees.
¶31 The Landlord and Tenant Act permits a rental agreement to include “terms and conditions not prohibited by this chapter.” Section 70-24-201(1), MCA. The Act provides: “[i]n an action on a rental agreement or arising under this chapter, reasonable attorney fees, together with costs and necessary disbursements, may be awarded to the prevailing party notwithstanding an agreement to the contrary.” Section 70-24-442(1), MCA. But the Act specifically prohibits a rental agreement from providing that a party agrees “to waive or forego rights or remedies under this chapter” or “to indemnify the other party for that liability or the costs or attorney’s fees connected therewith.” Section 70-24-202, MCA. Summers argues that the language in the lease agreement that purports to make the tenants liable to pay the landlord’s attorney fees is contrary to the Act.
¶32 The lease agreement here repeats at least four times that the tenant agrees to pay the landlord’s attorney fees if the tenant breaches the lease. The “ATTORNEY FEES” section of the lease agreement explicitly states: “All legal fees and collection costs incurred by Landlord due to Tenant’s failure to remedy a breach shall be the responsibility of Tenant.” Crestview claims despite the prohibition of § 70-24-202, MCA, that this attorney fee term is permitted by a provision in the Security Deposits Act and principles of contract interpretation. However, the Landlord and Tenant Act specifically provides that “reasonable attorney fees ... may be awarded to the prevailing party notwithstanding an agreement to the contrary.” Section 70-24-442(1), MCA (emphasis added). The attorney fee terms in the lease agreement here directly violate this statutory provision by binding the tenant to an absolute attorney fee obligation and attempting to avoid a discretionary award of attorney fees to the prevailing party as provided in the Act. The plain terms of § 70-24-442(1), MCA, prohibit this practice.
*133 ¶33 The lease agreement violates § 70-24-202(1), MCA, by requiring tenants to waive or forego their rights or remedies to a discretionary award of attorney fees to the prevailing party under the Landlord and Tenant Act. This Court has held that a provision in a lease agreement which stated “[acceptance of a refund of all or a portion of the deposit by tenant shall constitute a full and final release of landlord from any claims of tenant of any nature whatsoever,” was illegal under § 70-24-202(1), MCA, because the provision attempted to waive tenants’ right to request attorney fees under § 70-24-442(1), MCA. Solem, 274 Mont. at 79-80, 906 P.2d at 213-14. Similarly, we conclude that the Landlord and Tenant Act prohibits the attorney fee terms used in Crestview’s lease agreement.
¶34 Having determined that both the accelerated rent and attorney fees provisions of the lease violate the Landlord and Tenant Act, we address the effect of a landlord’s use of such provisions. Section 70-24-403(1), MCA (2005), provides that “[a] provision prohibited by 70-24-202 included in a rental agreement is unenforceable.” Since the Landlord and Tenant Act prohibits the contractual attorney fee provision in Crestview’s lease, that provision is unenforceable.
¶35 Similarly, § 70-24-404(l)(a), MCA, provides that when a court concludes as a matter of law that “a rental agreement or any provision thereof is unconscionable, the court may refuse to enforce the agreement or enforce the remainder of the agreement without the unconscionable provision to avoid an unconscionable result.” Therefore, the unconscionable accelerated rent provision is unenforceable.
¶36 The issue here is whether simply severing these provisions from the lease agreement is sufficient to protect tenants’ statutory rights. The Wisconsin Supreme Court has reasoned that merely severing prohibited provisions from a lease agreement would not eliminate “the intimidation of tenants that the inclusion of such unenforceable clauses poses.” Baierl v. McTaggart, 629 N.W.2d 277, ¶ 34 (Wis. 2001). The Wisconsin Court persuasively noted that such provisions would continue to appear in leases if the only legal repercussion was to sever such prohibited clauses:
Landlords would have little incentive to omit such clauses and change their practice. A landlord could insert the clauses with relative impunity, knowing that the court will merely ignore this unfair trade practice by severing the clause.
Not only would landlords likely suffer no consequences from the violation, but they would also reap the unfair benefit of the *134 clause’s inclusion-the potential intimidation that such a clause poses. By the undeterred inclusion of such clauses, tenants may continue to be intimidated into forgoing their legal rights.
Baierl, ¶¶ 34-35.
¶37 We similarly conclude that merely severing the prohibited rental provisions does not address the chilling effect that such provisions could continue to have on the exercise of tenants’ statutory rights if the only consequence to a landlord for using such provisions is that they are found unenforceable by a court. As noted above, the law provides that “the court may refuse to enforce the agreement ... to avoid an unconscionable result.” Section 70-24-404(l)(a), MCA. In this case, to allow Crestview to enforce the rental agreement following inclusion of the accelerated rent and attorney fees provisions, together with Crestview’s illegal deductions of future rent from the security deposit, would lead to an unconscionable result. Consequently, we hold that the entire lease agreement is unenforceable by Crestview.
¶38 Damages may also be available to Summers, which would further counter the chilling effect that prohibited lease provisions have on tenants exercising their statutory rights. The Landlord and Tenant Act, § 70-24-403(2), MCA (2005), provides “[i]f a party purposefully uses a rental agreement containing provisions known by him to be prohibited, the other party may recover, in addition to his actual damages, an amount up to 3 months’ periodic rent.” Crestview’s provision requiring tenants to pay its attorney fees in any legal dispute is clearly prohibited by the Landlord and Tenant Act, and Crestview should have known that from simply reading the Act. Moreover, Crestview’s use of the lease to collect future rent from Summers’ deposit is clearly prohibited by law. Consequently, we remand this matter to the District Court to determine the amount of Summers’ damages under § 70-24-403(2), MCA, for Crestview’s use of a prohibited attorney fees provision, the deduction of future rent from the security deposit, and the unconscionable accelerated rent provision.
¶39 In summary, we conclude that Crestview wrongfully deducted future unpaid rent from the security deposit; wrongfully imposed an unconscionable and unenforceable provision for accelerated rent upon breach; and wrongfully imposed a prohibited contractual obligation of attorney fees on Summers in violation of Montana law. We conclude that the entire lease agreement is unenforceable by Crestview. Crestview’s cross-appeal is therefore moot. We vacate the District Court’s award of damages and attorney *135 fees to Crestview and hold that Summers is the prevailing party entitled to attorney fees. We remand to the District Court to determine reasonable attorney fees and costs. We also remand for a determination of an appropriate award under the provisions of § 70-24-403(2), MCA.
¶40 Reversed and remanded for further proceedings consistent with this opinion.
JUSTICES LEAPHART, WHEAT and MORRIS concur.

 Summers also named the collection agency as a defendant for violating 15 U.S.C. §§ 1692(e)(5) and (f)(1) of the Pair Debt Collection Practices Act, but that matter was settled and is not implicated here.

 While the District Court found that Crestview acted reasonably to mitigate damages, that finding was based on the fact that Crestview had placed the apartment back in its pool of vacant apartments. Our review of the record does not establish that this finding was clearly erroneous.