JUSTICE MORRIS
delivered the Opinion of the Court.
¶1 Tiffany Kelker (Kelker) submitted an online application for a payday loan with Geneva-Roth Ventures, Inc. (Geneva-Roth). Geneva-Roth charged Kelker an interest rate of 780% APR. The Loan Agreement, which Kelker signed electronically, contained an arbitration clause. Kelker brought a putative class action against Geneva-Roth for charging an interest rate higher than the 36% APR permitted by the Montana Consumer Loan Act for payday loans, § 32-5-301, MCA. Geneva-Roth filed a motion to compel arbitration pursuant to the arbitration clause in the Loan Agreement. The District Court deemed the arbitration clause unenforceable and denied Geneva-Roth’s motion. Geneva-Roth appeals.
¶2 Geneva-Roth raises the following issue on appeal:
¶3 Whether the District Court should have compelled arbitration pursuant to the arbitration clause in the loan agreement.
PROCEDURAL AND FACTUAL BACKGROUND
¶4 Kelker, a Montana resident, submitted an online application at Geneva-Roth’s website, www.loanpointusa.com, for a $600 “payday loan” on January 14, 2011. Geneva-Roth, a non-resident of Montana, charged Kelker an interest rate of 780% APR. Geneva-Roth ultimately withdrew electronically over $1,800 in interest charges from Kelker’s bank account.
¶5 To complete her loan application, Kelker clicked on a box that stated that she had read, understood, and agreed to be bound by the *256 terms of the Loan Agreement, and that she understood that by typing in her name in a separate box, she was electronically signing her loan application. The full text of the eight-page Loan Agreement was not visible on Kelker’s computer screen unless she scrolled down. The Loan Agreement included a clause to compel arbitration for “any claim, dispute, or controversy” that arose out of the agreement. Geneva-Roth used bold font and all capital letters to draw attention to certain provisions of the Loan Agreement. Geneva-Roth did not highlight the arbitration clause in this manner.
¶6 The disputes purportedly governed by the arbitration clause include “the validity of this agreement to arbitrate disputes.” Geneva-Roth agreed to waive the “[c]ustomer’s arbitration fees” in the event that the customer could not afford to pay them. The arbitration clause provides no guidance, however, as to the standard to employ to make this determination or who would be empowered to make this determination. The clause further provides that any arbitration hearing would “take place at a location near Customer’s residence.” The clause provides no guidance as to what constitutes “near.”
¶7 Kelker brought a putative class action in which she alleges that the 780% interest rate charged by Geneva-Roth violated the Montana Consumer Loan Act, § 32-5-301, MCA. Kelker also claimed that the loan itself was unconscionable, that Geneva-Roth had engaged in unfair, deceptive, or fraudulent practices in making and collecting on the loan, that Geneva-Roth had failed to provide the disclosures required under the Montana Consumer Loan Act, and that Geneva-Roth had engaged in business in Montana without a valid license.
¶8 Geneva-Roth sought to compel arbitration pursuant to the arbitration clause in the Loan Agreement. The District Court deemed the arbitration clause unenforceable and denied Geneva-Roth’s motion to compel arbitration. Geneva-Roth appeals. We affirm.
STANDARD OF REVIEW
¶9 We review de novo a district court’s order to compel arbitration. Mardsen v. Blue Cross & Blue Shield of Mont., Inc., 2012 MT 306, ¶ 8, 368 Mont. 34, 291 P.3d 1229; Solle v. Western States Ins. Agency, 2000 MT 96, ¶ 8, 299 Mont. 237, 999 P.2d 328.
DISCUSSION
¶10 Whether the District Court should have compelled arbitration pursuant to the arbitration clause in the Loan Agreement.
¶ 11 Agreements to arbitrate generally represent valid and enforceable contracts under Montana law. Kortum-Managhan v. Herbergers *257 NBGL, 2009 MT 79, ¶ 15, 349 Mont. 475, 204 P.3d 694; § 27-5-114, MCA. Federal policy similarly places arbitration agreements on equal footing with other contracts. 9 U.S.C. § 2; AT&T Mobility LLC v. Concepcion,_U.S._, 131 S. Ct. 1740, 1745 (2012). The Federal Arbitration Act (FAA) governs contracts that involve interstate commerce. 9 U.S.C. § 2; Perry v. Thomas, 482 U.S. 483, 489, 107 S. Ct. 2520, 2525 (1987).
¶12 The U.S. Supreme Court has clarified that, under the FAA, when a party challenges the validity of a contract as a whole, an arbitrator should resolve that dispute in the first instance. Nitro-Lift Techs., L.L.C. v. Howard,_U.S._, 133 S. Ct. 500, 503 (2012). When a party challenges the validity of the arbitration clause in a contract, however, a court may resolve that dispute in the first instance. NitroLift, _U.S._, 133 S. Ct. at 503. In reviewing the validity of the arbitration clause, however, a state court must apply state law that arose to govern the validity, revocability, and enforceability of contracts generally. Kortum-Managhan, ¶ 17; Concepcion,_U.S. at __, 131 S. Ct. at 1746.
¶13 Kelker challenges both the validity of the arbitration clause of the Loan Agreement and the validity of the entire Loan Agreement. We consider only Kelker’s challenge to the arbitration clause of the Loan Agreement. A party cannot be forced to arbitrate a dispute that she has not agreed to submit to arbitration. State ex rel. Bullock v. Philip Morris, Inc., 2009 MT 261, ¶ 15, 352 Mont. 30, 217 P.3d 475. A court should first determine whether the parties agreed to arbitrate a matter. Bullock, ¶ 15; Solle, ¶ 22.
¶14 Kelker contends that generally applicable Montana contract law renders the arbitration clause unenforceable. Kelker relies on Kortum-Managhan in urging this Court to find the arbitration clause unenforceable. Geneva-Roth concedes that this Court can determine the validity of the arbitration clause itself. Geneva-Roth argues, however, that the arbitration agreement cannot be deemed invalid under generally applicable Montana contract law. Geneva-Roth further argues that Concepcion changed the way that the U.S. Supreme Court interpreted the FAA, and, therefore, pre-empted our analysis of the FAA set forth in Kortum-Managhan.
¶15 Concepcion struck down the California “Discover Bank” rule that deemed unconscionable all arbitration clauses that prevented class actions. Concepcion,_U.S. at_, 131 S. Ct. at 1746. The Court determined that the FAA preempted state law rules, such as the “Discover Bank” rule, that prohibit outright the arbitration of a particular type of claim. Concepcion,_U.S. at_, 131S. Ct. at 1747. *258 The Court specifically reiterated, however, that the FAA preserves “generally applicable contract defenses, such as fraud, duress, or unconscionability.” Concepcion,_U.S. at_, 131 S. Ct. at 1746, citing Doctor’s Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 116 S. Ct. 1652, 1656 (1996). The Court also cited Doctor’s Associates for the proposition that these generally applicable contract formation defenses cannot be available solely to challenge an arbitration clause, or derive their meaning from the fact that an agreement to arbitrate is at issue. Concepcion,_U.S. at_, 131 S. Ct. at 1746.
¶16 We recognized in Kortum-Managhan that the FAA permits this Court to apply only law that arose “to govern issues concerning the validity, revocability, and enforceability of contracts generally” to determine the validity of an arbitration clause. Kortum-Managhan, ¶ 17. The Court also cited Doctor’s Associates in Kortum-Managhan for this same proposition. Kortum-Managhan, ¶ 17. Concepcion restated the law on which this Court relied in Kortum-Managhan: that generally applicable contract law governs the validity of an arbitration clause. Concepcion,_U.S. at_, 131 S. Ct. at 1746. Accordingly, Concepcion did not alter the U.S. Supreme Court’s interpretation of the FAA in any manner that would invalidate our analysis in Kortum-Managhan.

Generally Applicable Defense to Contract Formation

¶17 Geneva-Roth next argues that this Court applied to the arbitration clause in Kortum-Managhan a contract formation defense available solely to challenge an arbitration clause in violation of Concepcion. We stated in Kortum-Managhan that generally applicable contract law provides that an adhesion contract “will not be enforced against the weaker party if it is (1) not within their reasonable expectations, or (2) within their reasonable expectations, but, when considered in its context, proves unduly oppressive, unconscionable or against public policy.” Kortum-Managhan, ¶ 23.
¶18 Although we list them separately, our “reasonable expectation” analysis represents a subset of whether a contract is “unconscionable.” The subset of unconscionability based on reasonable expectations focuses on whether a party understood the contract. Highway Specialties, Inc. v. State, 2009 MT 253, ¶¶ 16-17, 351 Mont. 527, 215 P.3d 667. Even if a party fully understood the terms, however, a contract still can be unconscionable if the terms are too one-sided or oppressive. Highway Specialties, ¶ 12.
¶19 We discuss the interplay between unconscionability and reasonable expectations in Highway Specialties, where we analyzed for *259 unconscionability a contractual provision for liquidated damages. The test for unconscionability involves a two-step inquiry: whether the contract qualifies as a contract of adhesion, and whether the contract unreasonably favored the drafter. Highway Specialties, ¶ 12. The “unreasonably favorable to the drafter” analysis includes an inquiry into “whether the provision was within the reasonable expectations of, or unduly oppressive to, the weaker party.” Highway Specialties, ¶ 16.
¶20 We apply the same test that we applied in Kortum-Managhan when we consider the unconscionability of contracts generally, not solely when a contract includes an arbitration clause. We applied this analysis in Highway Specialties when we considered the unconscionability of a contract provision for liquidated damages. Highway Specialties, ¶ 12. We again applied this test when we considered the unconscionability of a contract provision for liquidated damages in a lease in Summers v. Crestview Apts., 2010 MT 164, 357 Mont. 123, 236 P.3d 586. We reiterated in Summers that unconscionability requires a two-fold determination: “that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions.” Summers, ¶ 22. The “reasonable expectations” analysis that we used in Kortum-Managhan derives directly from generally applicable contract law rather than any unique law applicable only to arbitration agreements.
¶21 We consider the same factors when we analyze for unconscionability a contractual provision for arbitration as we do when we analyze for unconscionability a contract. Kortum-Managhan, ¶ 27; Kelly v. Widner, 236 Mont. 523, 528, 771 P.2d 142, 145 (1989). We listed in Kortum-Managhan a number of factors that a court should consider in determining whether a contractual provision proves unconscionable for being outside a party’s reasonable expectations. These factors include whether the waiver clause was conspicuous and explained the consequences of the provision (e.g. waiver of the right to trial by jury and right of access to the courts); whether a disparity existed in the bargaining power of the contracting parties; whether a difference in business experience and sophistication of the parties existed; whether the party charged with the waiver was represented by counsel at the time the agreement was executed; whether economic, social or practical duress compelled a party to execute the contract; whether the parties actually signed the agreement or separately initialed the waiver provision; and whether the waiver clause was ambiguous or misleading. Kortum-Managhan, ¶ 27.
¶22 The factors that we consider in evaluating a claim of *260 unconscionability for an arbitration clause reflect the contract law of unconscionability generally. Kortum-Managhan, ¶ 27; Kelly, 236 Mont, at 528, 771 P.2d at 145; West v. Club at Spanish Peaks, L.L.C., 2008 MT 183, ¶ 53, 343 Mont. 434, 186 P.3d 1228; Fitzgerald v. Aetna Ins. Co., 176 Mont. 186, 190-91, 577 P.2d 370, 372 (1978). Corbin on Contracts recognizes that the existence of many of the factors that we analyze in Kortum-Managhan can render a contract unconscionable. 7-29 Corbin on Contracts § 29.4. These elements include a lack of meaningful choice, a contract offered on a take it or leave it basis, and a party that lacks sophistication. Kortum-Managhan, ¶ 27; 7-29 Corbin on Contracts § 29.4.
¶23 The Court applied these same factors in Kelly in considering whether a contract was unconscionable. Kelly had been seriously injured in an automobile accident. The insurance adjuster offered, and Kelly accepted, a small settlement in return for her release of claims. Kelly later challenged the release contract on grounds of unconscionability. Kelly, 236 Mont, at 527, 771 P.2d at 144-45.
¶24 The Court noted that the principle “of doing justice under the circumstances of each case” underlies the unconscionability analysis. Kelly, 236 Mont, at 528, 771 P.2d at 145. The Court further recognized that unconscionability lacks “a succinct or precise definition.” Kelly, 236 Mont, at 528, 771 P.2d at 145. The Court listed elements, however, that may indicate unconscionability. Kelly, 236 Mont, at 528, 771 P.2d at 145. These elements include unequal bargaining power of the parties, lack of meaningful choice, oppression, and exploitation of the weaker party’s vulnerability or lack of sophistication. Kelly, 236 Mont. at 528, 771 P.2d at 145. The Court further cited J. Calamari and J. Perillo, The Law of Contracts § 56 (1970) for this same proposition. The Court examined Kelly’s dire financial situation, her lack of education, and her lack of legal advice as factors that made her vulnerable to exploitation. Kelly, 236 Mont, at 528, 771 P.2d at 145.
¶25 This Court also considers whether ambiguities exist in all contracts, including contracts that contain arbitration clauses. Club at Spanish Peaks, ¶ 53; Fitzgerald, 176 Mont, at 190-91, 577 P.2d at 372; Riehl v. Cambridge Court GF, LLC, 2010 MT 28, ¶¶ 28-30, 355 Mont. 161, 226 P.3d 581. We recognized that “an ambiguity exists where the language of a contract, as a whole, reasonably is subject to two different interpretations.” Club at Spanish Peaks, ¶ 53; see also Riehl, ¶ 26 (quoting Club at Spanish Peaks while analyzing an arbitration clause for ambiguity). If the court determines a contract has ambiguous terms, the court interprets the contract “most strongly” *261 against the party who drafted it. Club at Spanish Peaks, ¶ 53.
¶26 The Court considered whether a car insurance contract contained an ambiguity in Fitzgerald. The insurance policy covered only automobiles not owned in whole or in part by the insured party. The insurance policy provided coverage for “hired automobiles.” Fitzgerald, 176 Mont. at 190, 577 P.2d at 372. A dispute arose over the scope of the policy’s coverage when the insured owned the trailer component of the tractor-trailer involved in the accident. The insured party hired the tractor component of the tractor-trailer.
¶27 The Court determined that the entire tractor-trailer constituted one automobile. The Court further determined that the provision in the contract regarding the scope of coverage created an ambiguity. The contractual language could be interpreted to exclude coverage where the insured partially owned the automobile. The contract could be construed, in contrast, to provide coverage where the insured partially rented the automobile. Fitzgerald, 176 Mont. at 190-91, 577 P.2d at 372. The Court construed the ambiguity in the contract against the insurance company that had drafted the contract. The Court determined that the contract, interpreted against the drafter, provided coverage for the entire tractor-trailer involved in the accident. Fitzgerald, 176 Mont. at 191, 577 P.2d at 372.
¶28 This Court uses the same test and analyzes the same factors for possible unconscionability of arbitration clauses as we use to analyze the possible unconscionability of contracts generally. Kortum-Managhan, ¶ 27;Highway Specialties, ¶ 12; Summers, ¶ 22;Kelly, 236 Mont, at 528, 771 P.2d at 145; Club at Spanish Peaks, ¶ 53; Fitzgerald, 176 Mont. at 190-91, 577 P.2d at 372; Riehl, ¶¶ 26-30.

Enforceability of the Arbitration Clause

¶29 We evaluate the arbitration clause in the Loan Agreement to determine whether the arbitration clause was unconscionable under generally applicable Montana contract law. A contract is unconscionable if it is a contract of adhesion and the contractual terms unreasonably favor the drafter. Highway Specialties, ¶ 12. We consider whether the contractual terms fell within Kelker’s reasonable expectations as we analyze whether the contractual terms unreasonably favor the drafter. Highway Specialties, ¶ 12.
¶30 We first look to whether the loan agreement constitutes a contract of adhesion. A contract of adhesion involves a standard form contract prepared by one party, to be signed by a weaker party who has little choice about the terms. Woodruff v. Bretz, Inc., 2009 MT 329, ¶ 8, 353 Mont. 6, 218 P.3d 486. A contract of adhesion arises when the stronger party gives the weaker party a choice either to accept, or to *262 reject, the contract without the opportunity to negotiate its terms. Woodruff, ¶ 8.
¶31 No doubt exists that Geneva-Roth afforded Kelker no opportunity to negotiate the terms of the contract. Geneva-Roth presented Kelker with a contract on the Internet. Kelker either could accept or reject the standardized agreement. Geneva-Roth afforded Kelker no meaningful choice whether to accept any particular terms, including the arbitration provision. Woodruff, ¶ 8. The Loan Agreement qualifies as a contract of adhesion under these circumstances. Woodruff, ¶ 8.
¶32 The fact that the contract qualifies as one of adhesion does not by itself render the arbitration clause unconscionable. Woodruff, ¶ 13. We now must assess whether the arbitration clause unreasonably favors Geneva-Roth, including whether the arbitration clause fell outside Kelker’s reasonable expectations. Highway Specialties, ¶ 12.
¶33 We consider the totality of the Kortum-Managhan factors in determining whether the arbitration clause fell within Kelker’s reasonable expectations. Kortum-Managhan, ¶ 27;Kelly, 236 Mont, at 528, 771 P.2d at 145. The District Court determined that nearly all of these factors weigh against enforcement of the arbitration clause. We agree.
¶34 Kelker presented undisputed evidence in her affidavit that she did not understand the arbitration agreement. Nothing conspicuous denotes the arbitration clause. No bold or capital letters highlight, the arbitration clause. Geneva-Roth highlighted several other sections of the Loan Agreement with bold or capital letters. Kelker alleges in her undisputed affidavit that no one explained the arbitration clause.
¶35 In fact, Kelker entered the contract over the Internet with no contact with any employees or representatives of Geneva-Roth. Cf. Kluver v. PPL Mont., LLC, 2012 MT 321, ¶ 26, 368 Mont. 101,293 P.3d 817 (noting that proposed electronic memorandum had been “reviewed and approved by the parties and their counsel”). Kelker signed the Loan Agreement as a whole. She did not separately sign or initial the arbitration clause. No counsel represented Kelker when she signed the arbitration agreement. See Kelly, 236 Mont, at 528, 771 P.2d at 145 (determining that Kelly’s lack of legal advice represented an important factor in finding the contract unconscionable).
¶36 Kelker asserts further that a difference in business experience and sophistication of the parties existed at the time that she executed the Loan Agreement. Geneva-Roth has presented no evidence to suggest that Kelker qualifies as a sophisticated party with significant business experience. Further, it appears that economic duress *263 compelled Kelker to enter into this contract for a $600 payday loan with a 780% APR. See Kelly, 236 Mont, at 528, 771 P.2d at 145 (determining that Kelly’s dire financial situation and her lack of education represented important factors in finding the contract unconscionable).
¶37 Ambiguities also plague the arbitration clause. The sentence before the arbitration clause provides that the Loan Agreement “does not constitute a waiver of any of Customer’s rights to pursue a claim individually.” The arbitration clause follows immediately. The arbitration clause indicates that the parties agree “to arbitrate disputes.” The arbitration clause further purports to give the consumer notice that “[w]ithout this arbitration agreement, both parties have the right to litigate disputes through the law courts but we have agreed instead to resolve disputes through binding arbitration.” These two clauses, that the consumer does not waive any of her rights, and that the consumer waives her right to litigation in court, cannot easily be reconciled. Kortum-Managhan, ¶ 27; Riehl, ¶¶ 26-30. The language gives rise to two reasonable interpretations: that Kelker maintained all of her rights, including her right to a trial, or that Kelker gave up her right to a trial and must submit to arbitration. Club at Spanish Peaks, ¶ 53; Fitzgerald, 176 Mont, at 190-91, 577 P.2d at 372. We generally construe an ambiguity in a contract against the party who drafted the contract-in this case, Geneva-Roth. Club at Spanish Peaks, ¶ 53; Fitzgerald, 176 Mont, at 190-91, 577 P.2d at 372.
¶38 We have considered the validity of the arbitration clause in the Loan Agreement using generally applicable Montana contract law. Kortum-Managhan, ¶ 27. The arbitration clause qualifies as a contract of adhesion and falls outside Kelker’s reasonable expectations, and, therefore, the arbitration clause is unconscionable. Highway Specialties, ¶ 12; Kortum-Managhan, ¶ 27.
¶39 Affirmed.
CHIEF JUSTICE McGRATH and JUSTICE WHEAT concur.