FILED

08/25/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0534

DA 19-0534

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 218N

WILLIAM RIDEG,

      Plaintiff and Appellee,

  v.

ROBERT BERLETH and NADIA BERLETH, et al.,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-18-1186
Honorable Karen S. Townsend, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

         Robert W. Berleth, Berleth & Associates, PLLC, Houston, Texas

      For Appellee:

         Thomas C. Orr, Thomas C. Orr Law Office, P.C., Missoula, Montana

Submitted on Briefs: June 10, 2020

Decided: August 25, 2020

Filed:

_____
Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. The case title, cause number, and disposition shall be included in our quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Robert Berleth and Nadia Berleth (hereinafter Robert, Nadia, or collectively, Tenants) appeal the judgments of the Montana Fourth Judicial District Court, Missoula County, evicting them from rental residential property due to material breach of lease, returning possession of the property to landlord William Rideg (Landlord), and determining liability and damages on their related claims against Landlord. We affirm.

¶3 Landlord owns a 4,200 square-foot house, with two-car garage and an apartment with a separate entrance, on 2.6 acres of land in Huson, Montana (Nine Mile Property). In early 2018, Robert was a licensed Texas lawyer who had recently taken the Montana Bar Examination and was looking to move to Montana with his wife Nadia. In response to a rental listing, and upon communication with Landlord, Tenants viewed the Nine Mile Property in March 2018, and later executed a eleven-page lease agreement for a one-year term beginning April 15, 2018. Tenants did not intend to have the separate-access apartment included in the lease, but the written agreement made no such distinction. Tenants moved into the main house and garage in early May 2018.

¶4 Immediately after the execution of the lease, Landlord emailed Robert on March 20, 2018, to advise of Landlord's intent to stay in the separate-access apartment two nights a

2

week and thus proposed that he would pay the monthly cost ($80) of internet service for use by all in return for his use of the apartment. Robert responded: "Works for me." *Inter alia*, the written lease included the following provisions:

> **LAWN CARE AND SNOW REMOVAL:** When required by this Agreement, lawn care includes weeding, trimming and raking as necessary as well as mowing at least every 14 (fourteen) days during June 1 – Sept 15, and watering of lawn, plants and trees. Tenants will remove snow on driveway and walkways. If the Tenant fails to perform lawn care or snow removal obligations, Manager will cause said performance and bill the Tenant for actual costs incurred.

> **ANIMALS / PETS:** No pets shall be permitted on the premise, except the following described pets for which additional rent is paid: 1 dog: a German Shepard and 1 cat. . . . Tenants or their guests will not bring or allow additional animals on the premises at any time without a prior written consent from the Manager.

Except as otherwise expressly provided, the written lease precluded Tenants from "mak[ing] other alterations" without the prior consent of the leasehold manager (i.e. Landlord). The lease further specified, *inter alia*, that Tenants had a duty to use the leasehold property, including the plumbing fixtures and facilities in a manner reasonable under the circumstances.

¶5 When Tenants were moving in the house in early May, Landlord noticed that they had two dogs—the lease-authorized German Shepherd and a Beagle. Upon Landlord's inquiry, Tenants responded that they were temporarily watching the Beagle for someone else.

¶6 A common water well served three neighboring properties including the Nine Mile Property and an adjacent property owned by Landlord's brother. Soon after Tenants moved

3

in, the common water well failed and the septic system on the Nine Mile Property backed up. Landlord subsequently learned from his brother that the shared well failed due to high seasonal run-off. Landlord advised Tenants of the problem and that his brother would be installing a cistern to provide water to their property. In the nine-day interim before restoration of running water on May 25, Landlord delivered water to Tenants for household uses and the hot tub on the property. Upon installation of the cistern, Landlord also arranged and paid for the recurring costs of filling the cistern. Upon notice from Tenants that the septic system again backed up on May 29, Landlord arranged for a third-party contractor to pump the tank and clear the lines within two days. Landlord thereafter stayed in the separate apartment a few times in June and July.

¶7 Problems arose between the parties in August 2018. Robert closed the water spigot in the main house that supplied water to the separate apartment, thereby forcing Landlord to make several requests that he re-open it. In a separate incident, Landlord accidently damaged the fender of Tenants' 2005 Yukon Denali Sport Utility Vehicle (SUV) while moving a wooden door into the garage. Landlord was at the Nine Mile Property on a separate occasion when he noticed that someone, presumably Tenants, had damaged the bark on two aspen trees near the house while trimming. While taking photos of the damaged trees, Landlord noticed that Tenants were watching him from the house and asked Robert to come out to discuss the matter but he did not. While Landlord was later present at his brother's home across the road, a Sheriff's Deputy notified him that he was the subject of a trespass complaint made by Tenants regarding his earlier presence on the Nine

4

Mile Property. On August 29, Nadia unsuccessfully petitioned for a temporary protective order against Landlord.

¶8 On August 20, Landlord, through counsel, gave Tenants notice of his intent to terminate the lease based on various asserted breaches of the lease. The eviction notice included a 3-day notice based on an asserted unauthorized animal on the premises and a 14-day notice based on asserted damage, destruction, or impairment of leasehold property. After Tenants ignored the 3-day eviction notice, Landlord filed a district court complaint for eviction and possession on August 27, 2016. Following an expedited bench trial, the District Court issued findings of fact, conclusions of law, and judgment evicting Tenants and restoring possession of the leasehold property to Landlord based on the finding that Tenants had materially breached the lease agreement.

¶9 After a subsequent evidentiary hearing on damages on January 28 and 31, 2019, the District Court entered an order on damages on February 11, 2019, decreeing that: (1) Landlord was entitled to $537.51 in compensatory damages for leasehold property repair and replacement costs; (2) Tenants were entitled to the sum of $3,162.49 as a refund of the prepaid last month's rent and the balance of their security deposit after a $537.51 offset to Landlord; (3) Tenants were entitled to $1,785.20 in compensatory damages for the vehicle damage caused by Landlord; and (4) the parties were responsible for their respective attorney fees incurred in the action. Tenants timely appeal.

¶10 We review lower court findings of fact only for clear error. *Ray v. Nansel*, 2002 MT 191, ¶ 19, 311 Mont. 135, 53 P.3d 870. Findings of fact are clearly erroneous only if

not supported by substantial evidence or our review of the record indicates that the court misapprehended the effect of the evidence or was otherwise clearly mistaken. *Larson v. State*, 2019 MT 28, ¶ 16, 394 Mont. 167, 434 P.3d 241; *Interstate Prod. Credit Ass'n of Great Falls v. DeSaye*, 250 Mont. 320, 323, 820 P.2d 1285, 1287 (1991). We review lower court conclusions and applications of law de novo for correctness. *In re Marriage of Bessette*, 2019 MT 35, ¶ 13, 394 Mont. 262, 434 P.3d 894; *Steer, Inc. v. Mont. Dep't of Revenue*, 245 Mont. 470, 474-75, 803 P.2d 601, 603 (1990). Lower court findings of fact and conclusions of law are presumed correct on appeal. *Hellickson v. Barrett Mobile Home Transp., Inc.*, 161 Mont. 455, 459, 507 P.2d 523, 525 (1973). The appellant has the burden of demonstrating an asserted error on appeal. *In re Marriage of McMahon*, 2002 MT 198, ¶ 7, 311 Mont. 175, 53 P.3d 1266; *Hellickson*, 161 Mont. at 459, 507 P.2d at 525.

¶11 Tenants first assert that the District Court's finding that they materially breached the lease agreement was clearly erroneous. They assert, *inter alia*, that the March 20, 2018, email exchange between Robert and Landlord did not alter the underlying written lease agreement, that the court erroneously construed the "Lawn Care" provision of the lease to be inapplicable to tree trimming, that the court over estimated the extent of the damage to the trees on the leasehold property, that the court erroneously found and concluded that Landlord had a right to be on the leasehold property, and that the court erroneously failed to recognize or apply the effect of the so-called internet "data amendment." However, the District Court made comprehensive findings of fact and conclusions of law regarding the pertinent requirements and scope of the lease and Tenants' disputed compliance therewith.

6

Substantial record evidence supports the court's findings, and Tenants have failed to demonstrate that the court misapprehended the evidence or was otherwise mistaken on the evidence. Tenants have further failed to demonstrate that the court erroneously construed or applied the applicable law or contract provisions, whether written or oral.

¶12 Tenants next assert that the District Court erroneously denied them compensation for the reasonable costs of a temporary vehicle rental ($1,671) during repair of their vehicle and for the claimed post-repair diminution in the value ($500) of the previously undamaged vehicle. As a threshold matter, the parties stipulated to a $1,785.20 estimate as the cost of repairing the subject vehicle damage.

¶13 As the finders of fact in non-jury matters, district courts have broad discretion to determine the weight and credibility of the evidence presented. *Albrecht v. Albrecht*, 2002 MT 227, ¶ 47, 311 Mont. 412, 56 P.3d 339. "Damages must in all cases be reasonable" under the circumstances. Section 27-1-302, MCA. "Damages must be supported by substantial evidence, not mere guess or speculation[.]" *DeTienne v. Sandrock*, 2018 MT 269, ¶ 14, 393 Mont. 249, 431 P.3d 12 (citation omitted). To recover the cost of diminution of value of personal property, the claimant "must show its value before and after or the cost of repair." *Agrilease, Inc. v. Gray*, 173 Mont. 151, 157, 566 P.2d 1114, 1117 (1977) (citations omitted).

¶14 Here, as to the claimed vehicle rental cost, the District Court found Tenants' claim for $1,671 unjustified or unreasonable under the circumstances on the evidence presented. As to the claimed diminution in value, Tenants presented no non-speculative evidence

7

regarding the relative value of their vehicle before damage and after repair. Aside from argument regarding the weight and credibility of the evidence presented, the Tenants have not demonstrated that the court's findings of fact regarding the temporary vehicle rental cost or claimed diminution in value are clearly erroneous, that the court applied an incorrect measure of damages, or that the court abused its discretion in assessing the evidence presented.

¶15 Tenants next assert that the District Court erroneously denied their claim for punitive damages based on Landlord's alleged violation of § 70-24-312(3), MCA (barring landlord from "abus[ing] the right of access or use" of leasehold property "to harass the tenant."). Upon consideration of Tenants' evidence and argument at the initial bench trial, the District Court found that no evidence existed to support Nadia's claims of stalking and harassment by Landlord. The court later found that Nadia's similar allegations of stalking, harassment, and trespass by Landlord at the subsequent damages hearing were "not support[ed by] Nadia's claims" or video evidence and thus insufficient to prove landlord harassment in violation of § 70-24-312(3), MCA. The evidentiary record supports the court's findings, and Tenants have not demonstrated that it misapprehended the evidence or was otherwise mistaken. The District Court thus did not erroneously fail to find that Landlord harassed Tenants in violation of § 70-24-312(3), MCA.

¶16 Punitive damages are available under Montana law only "*in addition to compensatory damages*[]" on an underlying claim for relief not predicated on contract or breach of contract. *Folsom v. Mont. Pub. Employees' Ass'n, Inc.*, 2017 MT 204, ¶ 51, 388

8

Mont. 307, 400 P.3d 706 (citing § 27-1-220(1), MCA). (Emphasis in original.) Even then, punitive damages are available only upon proof, by "clear and convincing evidence[,]" of "actual fraud" or "actual malice[,]" as defined by § 27-1-221(2)-(5), MCA. Section 27-1-221(1) and (4), MCA. Here, Tenants have neither proven their asserted predicate claim for compensatory damages under § 70-24-312(3), MCA, as required by § 27-1-220(1), MCA; nor proven actual fraud or malice as required by § 27-1-221(1) and (4), MCA. The District Court thus did not erroneously deny them compensatory or punitive damages on their underlying statutory claim for landlord harassment.

¶17    Citing *Summers v. Crestview Apartments*, 2010 MT 164, 357 Mont. 123, 236 P.3d 586, Tenants finally assert that the District Court erroneously concluded that the early termination fee (i.e., one-month's rent or $1,850) specified in the parties' written lease agreement was not a prohibited accelerated rent or liquidated damages provision in violation of § 70-24-403(2), MCA. Section 70-24-202, MCA, expressly enumerates various provisions prohibited by law in residential leases. Residential lease provisions prohibited by § 70-24-202, MCA, are unenforceable as a matter of law. Section 70-24-403(1), MCA. A party to a residential lease agreement may recover specified statutory damages from another if the other "purposefully uses a rental agreement containing provisions known by the party to be prohibited[.]" Section 70-24-403(2), MCA.

¶18    As a threshold matter, the reference to "prohibited" lease "provisions" in § 70-24-403(2), MCA, narrowly refers to the "provision[s] prohibited by 70-24-202" as expressly referenced in § 70-24-403(1), MCA. *Summers* is distinguishable and inapplicable here

9

because it uniquely involved a prohibited and unenforceable rent acceleration provision in violation of §§ 70-24-202(1) and -403(1), MCA. *See Summers*, ¶ 38.[1] Tenants have failed to demonstrate that the one-month's rent early-termination fee here is akin to the rent acceleration provision at issue in *Summers*, a provision prohibited by § 70-24-202, MCA, or that Landlord "purposely" utilized such a provision as referenced in § 70-24-403(2), MCA.[2]

¶19 Because it presents a question controlled by settled law or by clear application of applicable standards of review, we decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules. Affirmed.

/S/ DIRK M. SANDEFUR

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE

---

[1] Without analysis reconciling §§ 70-24-202 and -403, MCA (unenforceable prohibited lease provisions), with § 40-4-404, MCA (lease provisions unenforceable due to unconscionability), *Summers* further cursorily characterized an unconscionable rent acceleration provision with a statutorily prohibited practice. *Summers*, ¶ 38.

[2] Upon our review of the record, we are troubled by the inaccuracy of many of Robert's factual and legal representations here and below as a self-represented litigant but licensed member of the Montana Bar. While we generally give wide latitude to self-represented litigants, we caution Robert to be more cognizant of his professional duties before the courts of this State. *See* M. R. Pro. Cond. 1.1, 1.3, and 3.3 (competence, diligence, and candor to the tribunal).